

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-1998

# In Re: Sacred Heart

Precedential or Non-Precedential:

Docket 97-1126

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"In Re: Sacred Heart" (1998). *1998 Decisions.* Paper 4.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/4

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 8, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1126

IN RE: SACRED HEART HOSPITAL OF NORRISTOWN, dba
SACRED HEART HOSPITAL & REHABILITATION CENTER,

Debtor

SACRED HEART HOSPITAL OF NORRISTOWN, dba
SACRED HEART HOSPITAL & REHABILITATION CENTER

v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF PUBLIC WELFARE
(D.C. Civil No. 96-cv-06172)

IN RE: SACRED HEART HOSPITAL OF NORRISTOWN,
d/b/a SACRED HEART HOSPITAL &
REHABILITATION CENTER,

Debtor

SACRED HEART HOSPITAL OF NORRISTOWN

v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF PUBLIC WELFARE
(D.C. Civil No. 96-cv-06286)

Sacred Heart Hospital of Norristown,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 96-cv-06172 and 96-cv-06286)

Argued September 25, 1997

BEFORE: COWEN, ROTH and LEWIS, Circuit Judges

(Filed January 8, 1998)

William A. Slaughter, Esq. (Argued)
Matthew M. Strickler
Ballard, Spahr, Andrews & Ingersoll
1735 Market Street
51st Floor
Philadelphia, PA 19103

 COUNSEL FOR APPELLANT
 Sacred Heart Hospital of
 Norristown

Sallie A. Rodgers, Esq.
Commonwealth of Pennsylvania,
Office of Legal Counsel
Department of Public Welfare
Health & Welfare Building
P.O. Box 2675
Harrisburg, PA 17105-2675

Thomas Blazusiak, Esq. (Argued)
Pennsylvania Department of
 Public Welfare
1600 Hanover Avenue
Allentown, PA 18103

 COUNSEL FOR APPELLEE
 Commonwealth of PA, Department
 of Public Welfare

Leonard H. Gerson, Esq.
Angel & Frankel
460 Park Avenue
New York, NY 10017

 COUNSEL FOR AMICUS-
 APPELLANT
 Business Bankruptcy Law
 Committee of the New York
 County Lawyers' Association

2

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal involves a challenge to the constitutionality of section 106(a) of the Bankruptcy Code, 11 U.S.C. S 106(a). That section purports to abrogate state sovereign immunity in federal court. The defendant-appellee, Commonwealth of Pennsylvania Department of Public Welfare ("DPW"), argued before the bankruptcy court that section 106(a) was not enacted pursuant to a valid exercise of congressional power. Therefore, DPW asserted that the Eleventh Amendment to the United States Constitution bars Debtor-appellant Sacred Heart Hospital of Norristown's ("Sacred Heart") lawsuit against DPW. The bankruptcy court denied DPW's claim of Eleventh Amendment immunity. It also entered an order on the merits granting declaratory judgment for Sacred Heart. The district court reversed the bankruptcy court's order dealing with Eleventh Amendment immunity and thereafter vacated the order of the bankruptcy court concerning the merits of the dispute. We will affirm the district court.

I.

Sacred Heart, an acute care community hospital in Norristown, Pennsylvania, began providing medical treatment to patients under Pennsylvania's Medical Assistance program ("the Program"), 55 Pa. Code S 1101.11 et seq., in 1967. By May of 1994, however, financial difficulties forced Sacred Heart to cease operations and lay off substantially all of its several hundred employees. Shortly thereafter, Sacred Heart filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

During the course of Sacred Heart's Chapter 11 proceedings, the Commonwealth asserted various claims against the Debtor. The Commonwealth's Department of Labor and Industry ("DLI") asserted claims against the Debtor for amounts claimed to be owed to the

3

Commonwealth under the Commonwealth's Unemployment Compensation and Workers' Compensation statutes; the Commonwealth's Department of Revenue ("DOR") asserted claims against the Debtor for sales and use taxes; and DPW asserted a claim against the Debtor arising under a lease.1

Earlier in the bankruptcy proceedings, the Debtor submitted invoices to DPW to obtain payment for some of the medical treatments it provided to patients under the Program. The Commonwealth's Office of Inspector General ("OIG") returned the invoices to the Debtor, however, because they were incorrectly completed. The Debtor resubmitted them to OIG in January of 1996, and submitted additional invoices to DPW in May of 1996. DPW denied all of the Debtor's claims because the Debtor failed to comply with 55 Pa. Code S 1101.68. This statute requires claims to be submitted to DPW within 180 days after the treatment is rendered.

The Debtor subsequently filed in the bankruptcy court the instant adversary proceeding against DPW, demanding judgment against DPW "in the amount to which it is entitled under the Medical Assistance program." Adv. Compl. at 5. The Debtor did not request a declaratory judgment, nor did it request any prospective injunctive relief against any Commonwealth officials.

DPW filed motions to dismiss based principally on the Eleventh Amendment to the United States Constitution. Sacred Heart responded by claiming that no Commonwealth agency was entitled to Eleventh Amendment immunity in these proceedings because the DLI and DOR claims in the bankruptcy proceedings constituted a waiver of the Commonwealth's sovereign

_____

1. Although DPW filed a proof of claim against the Debtor in these proceedings, it is undisputed that this claim was misdocketed. The lease in question was between DPW and the Sacred Heart General Hospital ("SHGH"), which also had a matter pending in the Bankruptcy Court for the Eastern District of Pennsylvania. Once DPW recognized that its claim against SHGH was unrelated to the Debtor, it agreed not to pursue any claim against the Debtor and not to oppose the Debtor's objection to the claim. Sacred Heart has never argued that DPW waived its Eleventh Amendment immunity because of this inadvertent filing.

4

immunity.2 Sacred Heart did not argue that the Eleventh Amendment did not apply or that DPW had waived its immunity under 11 U.S.C. S 106(c).

The bankruptcy court denied DPW's motions. It held that the Eleventh Amendment was not implicated because: (1) the adversary complaint sought not monetary relief but only a declaration that section 108(a) of the Bankruptcy Code affected state billing rules to require that otherwise untimely invoices be accepted as timely; and (2) the Commonwealth waived its sovereign immunity as to all claims relating to Sacred Heart's bankruptcy proceedings when DLI filed its proof of claim for unreimbursed unemployment benefits.3 The bankruptcy court subsequently issued a final order, stating that "[u]pon advice of the Debtor's counsel . . . the Debtor would presently be satisfied with an Order declaring 11 U.S.C. S 108(a) applies here." App. at A52.4 The bankruptcy court ordered that DPW accept as timely all billings that were not untimely under state rules as of the filing of Sacred Heart's bankruptcy. The Commonwealth appealed both orders to the district court.

_____

2. While it is unclear whether Sacred Heart's waiver argument before the bankruptcy court was based on 11 U.S.C. S 106(b) or some undefined general waiver principle, we need not be concerned with this ambiguity (or the constitutional issues concerning either theory) because Sacred Heart has failed to pursue these arguments in this appeal.

3. DPW filed an immediate appeal of this order under the collateral order exception to the final judgment rule. Although the bankruptcy court refused to grant a stay pending appeal, the district court subsequently granted the stay.

4. Section 108(a) provides as follows:

   (a) If applicable nonbankruptcy law, an order entered in a non-
   bankruptcy proceeding, or an agreement fixes a period within which
   the debtor may commence an action, and such period has not
   expired before the date of the filing of the petition, the trustee
may
   commence such action only before the later of--

   (1) the end of such period, including any suspension of such
   period occurring on or after the commencement of the case; or

   (2) two years after the order for relief.

11 U.S.C. S 108(a) (1993).

5

The district court by order entered on January 21, 1997, reversed the bankruptcy court. Specifically, the district court held that 11 U.S.C. S 106(a), which purports to abrogate state sovereign immunity, violates the Eleventh Amendment to the United States Constitution in light of the Supreme Court's decision in Seminole Tribe of Florida v. Florida, ___ U.S. ___, 116 S. Ct. 1114 (1996).5 The district court also determined that, because there was no contention that Sacred Heart's claims against DPW arose out of the same transaction or occurrence as either DLI's or DOR's claims against Sacred Heart, DPW did not waive its immunity pursuant to 11 U.S.C. S 106(b). In addition, because Sacred Heart never argued before the bankruptcy court that its claims were raised to offset DLI's or DOR's claims pursuant to 11 U.S.C. S 106(c), the district court found this issue waived. Finally, the district court held that the bankruptcy court lacked jurisdiction over the adversary proceeding after DPW appealed the August 7, 1996, order of the bankruptcy court, which was a collateral order dealing with the jurisdiction of the bankruptcy court. It also vacated the August 15, 1996, order of the bankruptcy court which dealt with the merits of the adversary proceedings. This appeal followed.

_____

5. Section 106 of the Bankruptcy Code, entitled "Waiver of sovereign immunity," provides, in pertinent part:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

> (1) Sections . . . 106 [and] 108 . . . of this title.

> . . . .

> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. S 106 (1994).

6

Sacred Heart essentially raises three arguments on appeal. First, it contends that the Eleventh Amendment does not limit bankruptcy court jurisdiction because bankruptcy courts do not exercise the judicial power of the United States under Article III. Second, it asserts that the Bankruptcy Clause, U.S. Const. art. I, S 8, cl. 4, vests Congress with the power to abrogate state sovereign immunity from suit in federal court. Third, it maintains that even if the Bankruptcy Clause itself does not authorize Congress to abrogate state sovereign immunity, Congress' abrogation of sovereign immunity in section 106(a) should be sustained as a valid exercise of its enforcement power under the Fourteenth Amendment.6

II.

"Because in bankruptcy cases the district court sits as an appellate court, our review of the district court's decision is plenary." Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir. 1988) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101–02 (3d Cir. 1981)). We review the findings of fact of the bankruptcy court only for clear error. Id. (citing In re Morrissey, 717 F.2d 100, 104 (3d Cir. 1983)). Findings of fact by a trial court are clearly erroneous when, after reviewing the evidence, the appellate court is "left with a definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (quotation marks omitted). We exercise plenary review over legal questions. In re Fegeley, 118 F.3d 979, 982 (3d Cir. 1997) (citing In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994)). It is error for a district court, when acting in the capacity of a court of appeals, to make its own factual findings. Universal Minerals, 669 F.2d at 104.

_____

6. DPW also contends that because DLI and DORfiled proofs of claim in these proceedings, Sacred Heart may bring a declaratory judgment action against DPW pursuant to section 106's "offset" provision, 11 U.S.C. S 106(c). However, we need not address this argument and, thus, the constitutionality of 11 U.S.C. S 106(c), because Sacred Heart failed to raise this issue below and, therefore, for purposes of this appeal, has waived it.

7

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. S 1334(a) and 28 U.S.C. S 157(a). The district court's appellate jurisdiction was based upon 28 U.S.C. S 158(a) and the collateral order exception to the final judgment rule. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-43, 113 S. Ct. 684, 687 (1993). We have jurisdiction pursuant to 28 U.S.C.S 158(d).

III.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the Amendment expressly prohibits only suits against States by citizens of other States, the Supreme Court has long held that the Eleventh Amendment also bars suits against the State by its own citizens, Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355 (1974) (collecting cases), and may bar suits invoking the federal question jurisdiction of Article III courts. See Idaho v. Coeur d'Alene Tribe of Idaho, ___ U.S. ___, ___, 117 S. Ct. 2028, 2033 (1997) (citing Seminole Tribe, ___ U.S. at ___, 116 S. Ct. at 1114). This immunity is based on a two-part presupposition: (1) "each State is a sovereign entity in our federal system[,]" Seminole Tribe, ___ U.S. at ___, 116 S. Ct. at 1122; and (2) "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." Id. at ___, 116 S. Ct. at 1122 (quotation marks omitted).

Eleventh Amendment immunity, however, is not absolute. When, as here, a plaintiff seeks recovery only from the state, and not from its officials, there are two ways to divest a state of its Eleventh Amendment sovereign immunity and hale the state into federal court. First, a state may waive its Eleventh Amendment immunity and consent to suit in federal court. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S. Ct. 3142, 3145 (1985). Second, Congress can abrogate a state's Eleventh

8

Amendment immunity, but only if two requirements are met: Congress must unequivocally express an intent to abrogate state immunity, and the legislative action must be "pursuant to a valid exercise of power . . . ." Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 425-26 (1985) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S. Ct. 900, 906 (1984)).

"Congress' intent to abrogate the States' immunity from suit must be obvious from `a clear legislative statement.' " Seminole Tribe, ___ U.S. at ___, 116 S. Ct. at 1123 (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 786, 111 S. Ct. 2578, 2584 (1991)). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." Atascadero, 473 U.S. at 246, 105 S. Ct. at 3149. Rather, abrogation will be effected only when the intent to abrogate is "stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." Id. at 239-40, 105 S. Ct. at 3146 (quotation marks omitted).

If congressional intent to abrogate is found, a federal court must next determine whether Congress, in enacting the specific legislation, was acting pursuant to a valid exercise of power. Prior to Seminole Tribe, the Supreme Court had recognized two sources of authority through which Congress could validly abrogate state sovereign immunity: section 5 of the Fourteenth Amendment, Fitzpatrick v. Bitzer, 427 U.S. 445, 96 S. Ct. 2666 (1976), and the Interstate Commerce Clause. Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S. Ct. 2273 (1989). In Seminole Tribe, however, the Court overruled Union Gas and held that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." ___ U.S. at ___, 116 S. Ct. at 1131-32. "Thus, since Seminole Tribe section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment."7 College Savings Bank v. Florida Prepaid

_____

7. As the Fitzpatrick Court explained, the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment, expanded

9

Postsecondary Education Expense Bd., ___ F.3d ___, ___, 1997 WL 749514, at *4 (3d Cir. Dec. 5, 1997).

In light of the foregoing, we must determine, first, whether Congress expressly abrogated the states' Eleventh Amendment immunity when enacting the current version of section 106(a),8 and, second, whether the Act in question was passed pursuant to a constitutional provision granting Congress the power to abrogate.

There can be no doubt that Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity under the Bankruptcy Code. See Matter of Fernandez, 123 F.3d 241, 243 (5th Cir. 1997); In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140, 1145 (4th Cir. 1997). Section 106(a) explicitly states that, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section . . . ." The only question before us, therefore, is whether Congress acted pursuant to a valid exercise of its power.

_____

federal power at the expense of state autonomy and thereby fundamentally altered the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment. 427 U.S. at 453–56, 96 S. Ct. at 2670–71. The Court reaffirmed this view of section 5 in Seminole Tribe. ___ U.S. at #6D 6D6D#, 116 S. Ct. at 1128.

8. Pursuant to section 113 of the Bankruptcy Reform Act of 1994, Pub. L. No. 103–394, 108 Stat. 4106 (1994), former section 106(c) was amended and recodified as current section 106(a). The Amendment was intended to overrule United States v. Nordic Village, Inc., 503 U.S. 30, 112 S. Ct. 1011 (1992) and Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 109 S. Ct. 2818 (1989), "two Supreme Court cases that have held the States and Federal Government are not deemed to have waived their sovereign immunity by virtue of enacting section 106(c) of the Bankruptcy Code." 140 Cong. Rec. H10766 (daily ed. Oct. 4, 1994) (Section–By–Section Description). The amendment was also intended "to clarify[ ] the original intent of Congress in enacting Section 106 of the Bankruptcy Code with regard to sovereign immunity." See Matter of Merchants Grain, Inc., 59 F.3d 630, 634 (7th Cir. 1995) (quotation marks omitted), judgment vacated sub nom. Ohio Agr. Commodity Depositors Fund v. Mahern, ___ U.S. ___, 116 S. Ct. 1411 (1996).

10

Sacred Heart contends that Seminole Tribe merely held that Congress could not abrogate sovereign immunity pursuant to the Indian and Interstate Commerce Clauses and did not address Congress' other Article I powers. Sacred Heart also argues that the Bankruptcy Clause is distinguishable from other Article I clauses because it contains an affirmative requirement of uniformity. In addition, Sacred Heart asserts that we should uphold section 106(a) as a valid exercise of Congress' power under section 5 of the Fourteenth Amendment.9  We find each of these arguments unpersuasive.

The Seminole Tribe Court held that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers. ___ U.S. at ___, 116 S. Ct. at 1131–32. The Court stated:

> Even when the Constitution vests in Congress complete law–making authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

Id. (footnote omitted). The Court thereby overruled Union Gas, its only prior case finding congressional authority to abrogate state sovereign immunity pursuant to an Article I power, and "restored the balance of power between Congress and the Judiciary anticipated by the Framers in Article I and Article III of the Constitution . . . ." Close v. New York, 125 F.3d 31, 38 (2d Cir. 1997).

_____

9. While Sacred Heart also contends that the Eleventh Amendment is not even implicated in this matter because bankruptcy courts do not exercise the judicial power of the United States under Article III, this argument cannot withstand the Supreme Court's recent pronouncement in Seminole Tribe that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." ___ U.S. at ___, 116 S. Ct. at 1131–32. See also In re Grewe, 4 F.3d 299, 304 (4th Cir. 1993) ("[W]hile functionally there may appear to be a separate bankruptcy court, for jurisdictional purposes there is only one court, i.e., the district court." (quotation marks and citation omitted)).

11

Moreover, there is simply no principled basis to distinguish the Bankruptcy Clause from other Article I clauses. See Matter of Fernandez, 123 F.3d at 244; In re Creative Goldsmiths, 119 F.3d at 1145–46; see also Hoffman, 492 U.S. at 111, 109 S. Ct. at 2828 (Marshall, J., dissenting) ("I see no reason to treat Congress' power under the Bankruptcy Clause any differently [than the Commerce Clause], for both constitutional provisions give Congress plenary power over national economic activity." (citation omitted)). Nor does the uniformity requirement in the Bankruptcy Clause change this analysis. "The Constitutional requirement of uniformity is a requirement of geographic uniformity" and nothing more. Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 172, 67 S. Ct. 237, 244 (1946) (Frankfurter, J., concurring). Because Eleventh Amendment immunity applies uniformly to all states and to all parties in a bankruptcy proceeding, the uniformity requirement is not frustrated, and Sacred Heart's argument must fail. As such, we hold that the Bankruptcy Clause is not a valid source of abrogation power.

Equally unavailing is Sacred Heart's assertion that Congress enacted section 106(a) pursuant to section 5 of the Fourteenth Amendment. Section 5 of the Fourteenth Amendment provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, S 5. "Correctly viewed, S 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." Katzenback v. Morgan, 384 U.S. 641, 651, 86 S. Ct. 1717, 1723–24 (1966). Congress' power, however, "extends only to enforc[ing] the provisions of the Fourteenth Amendment." City of Boerne v. Flores, ___ U.S. ___, ___, 117 S. Ct. 2157, 2164 (1997) (quotation marks omitted). "Any suggestion that Congress has a substantive, non-remedial power under the Fourteenth Amendment is not supported by our case law." Id. at ___, 117 S. Ct. at 2167–68.

While Congress need not "recite the words `section 5' or `Fourteenth Amendment' or `equal protection' " when

12

enacting laws pursuant to this power, E.E.O.C. v. Wyoming, 460 U.S. 226, 243 n.18, 103 S. Ct. 1054, 1064 n.18 (1983) (citation omitted), "if Congress does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims." Wilson-Jones v. Caviness, 99 F.3d 203, 210 (6th Cir. 1996), modified on other grounds, 107 F.3d 358 (6th Cir. 1997) (per curiam);10 see also Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 16, 101 S. Ct. 1531, 1539 (1981) (respect for state sovereignty requires that courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment"). Here, there is simply no evidence suggesting that section 106(a) was enacted pursuant to any constitutional provision other than Congress' Bankruptcy Clause power. See Matter of Fernandez, 123 F.3d at 245; In re Creative Goldsmiths, 119 F.3d at 1146; In re Kish, 212 B.R. 808, 815 (D.N.J. 1997); In re C.J. Rogers, Inc., 212 B.R. 265, 272-73 (E.D. Mich. 1997). On the contrary,

> the conclusion seems logically inescapable that in passing the 1994 Act Congress exercised the same specifically enumerated Article I bankruptcy power that it has traditionally relied on in enacting prior incarnations of the bankruptcy law dating back to 1860--68 years before the passage of the Fourteenth Amendment. We will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law.

In re Creative Goldsmiths, 119 F.3d at 1146 (citation omitted). Sacred Heart's argument must fail.

_____

10. Although the Wilson-Jones court indicated that the only cases it "could locate where legislation was upheld under the Fourteenth Amendment's enforcement clause concerned discrimination by state actors on the basis of race or gender[,]" 99 F.3d at 210, this court recently considered whether the Trademark Remedy Clarification Act of 1992, Pub. L. No. 102-542, 106 Stat. 3567 (1992), was a valid mechanism to enforce the Due Process Clause. See College Savings Bank, ___ F.3d at ___-___, 1997 WL 749514, at *5-9.

13

Finally, we also reject Sacred Heart's contention that bankruptcy constitutes a "privilege or immunity" under section 1 of the Fourteenth Amendment, thereby enabling Congress to utilize section 5 of the Fourteenth Amendment to abrogate Eleventh Amendment immunity. As we observed in Lutz v. City of York, 899 F.2d 255, 264 (3d Cir. 1990), the Privileges and Immunities Clause of the Fourteenth Amendment "has remained essentially moribund" since the Supreme Court's decision in The Slaughter-House Cases, 83 U.S. (16 Wall.) 36 (1873), and the Supreme Court has subsequently relied almost exclusively on the Due Process Clause as the source of unenumerated rights.[11] Moreover, the Supreme Court has expressly held that there is no constitutional right to a bankruptcy discharge, see United States v. Kras, 409 U.S. 434, 446-47, 93 S. Ct. 631, 638-39 (1973), and we can conceive of no reason to resuscitate this section of the Fourteenth Amendment by finding that bankruptcy is a privilege of national citizenship. See Matter of Fernandez, 123 F.3d at 245 ("[T]here is no indication that Congress passed the 1994 Act to remedy any incipient breaches or even some unarticulated, general violation of the rights specified in S 1 of the Fourteenth Amendment." (citation omitted)); see also In re Kish, 212 B.R. at 817; In re NVR, L.P., 206 B.R. 831, 842 (Bankr. E.D. Va. 1997).

Having concluded that Congress may not abrogate state sovereign immunity pursuant to any of its Article I powers,

_____

11. "The Fourteenth Amendment forbids states from abridging the privileges and immunities that flow from national citizenship." In re Storer, 58 F.3d 1125, 1128 (6th Cir. 1995) (citing U.S. Const. amend. XIV, S 1). The most prominent rights of national citizenship were catalogued in Twining v. New Jersey, 211 U.S. 78, 29 S. Ct. 14 (1908), and include the right to inform federal officials of violations of federal law, In re Quarles, 158 U.S. 532, 15 S. Ct. 959 (1895), the right to be free from violence while in the lawful custody of a United States marshal, Logan v. United States, 144 U.S. 263, 12 S. Ct. 617 (1892), the right to enter the public lands, United States v. Waddell, 112 U.S. 76, 5 S. Ct. 35 (1884), the right to vote in national elections, The Ku-Klux Cases, 110 U.S. 651, 4 S. Ct. 152 (1884), the right to petition Congress for redress of grievances, United States v. Cruikshank, 92 U.S. (2 Otto) 542 (1875), and the right to pass freely from state to state, Crandall v. Nevada, 73 U.S. (6 Wall.) 35 (1867).

14

and that there is no evidence that Congress enacted section 106(a) of the Bankruptcy Code pursuant to section 5 of the Fourteenth Amendment, we hold that section 106(a) is unconstitutional to the extent that it purports to abrogate state sovereign immunity in federal court. The January 21, 1997, order of the district court will be affirmed in all respects.

15

ROTH, Circuit Judge, concurring.

I agree with the majority holding rejecting the Bankruptcy Clause as a source of abrogation power post-Seminole Tribe of Florida v. Florida, ___ U.S. ___, 116 S.Ct. 1114 (1996), and consequently declaring 11 U.S.C. S 106(a) unconstitutional. I write separately, however, to express my concern about the breadth of the language used by the majority in reaching this holding.

The Supreme Court in Seminole Tribe, rejected both the Indian Commerce Clause and, by overruling Pennsylvania v. Union Gas Co., 491 U.S. 1, 109 S.Ct. 2273 (1989), the Interstate Commerce Clause as sources of abrogation power. ___ U.S. at __, 116 S.Ct. at 1127, 1131. The majority in the instant case, concludes that "there is simply no principled basis to distinguish the Bankruptcy Clause from other Article I clauses." Majority Op. at 12. I would not go so far as to discuss the merits of Article I powers other than the ones at issue in Seminole Tribe and the instant case: the Interstate Commerce Clauses, and the Bankruptcy Clause, respectively. I would hold that there is simply no principled basis to distinguish the Bankruptcy Clause from the Interstate Commerce Clause. In both words and scope, the Bankruptcy Clause is identical to the Indian Commerce Clause. Both clauses read as follows: "The Congress shall have Power [t]o . . . ." Furthermore, nothing in the history or text of the Bankruptcy Clause indicates any more an "alter[ation of the] pre-existing balance between state and federal power," Seminole Tribe, #6D6D 6D# U.S. at ___, 116 S.Ct. at 1128, than the Indian Commerce Clause.

In short, I would not foreclose the possibility that in the post-Seminole Tribe era, there exist any Article I powers sufficiently [powerful/unique/similar to the Fourteenth Amendment in effect as] to abrogate state sovereign immunity. See, e.g., Diaz-Gandia v. Dapena-Thompson, 90 F.3d 609, 616 (1st Cir. 1996) (reaffirming that Congress, acting pursuant to its War Powers, see U.S. Const. art. I, S 8, abrogated state sovereign immunity to damages actions brought under the Veterans' Reemployment Rights Act, 38 U.S.C. S 2021 et seq.). As the First Circuit reasoned, it is not clear that the Court's holding in Seminole Tribe was so broad as to strike down all sources of abrogation power in

16

Article I. 90 F.3d at 616. I would deal with potential sources of abrogation power in Article I, as they arise on a case-by-case basis.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit