**In re Edwin PEREZ, Debtor.**

**Bankruptcy No. 97–25411 (WFT).**

United States Bankruptcy Court,
D. New Jersey.

April 6, 1998.

---

Christopher Mills, Jersey City, NJ, for Debtor.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

### PROCEDURAL HISTORY

On January 28, 1997 and February 23, 1998 respectively the Court entertained two motions by the Chapter 13 debtor, Edwin Perez which raise significant issues concerning the jurisdiction of the Bankruptcy Court over municipal courts and judges vis-a vis the ability of this Court to order the rescission of municipal court orders of suspension of a debtor's driving privileges for non-moving parking violations in accord with repayment under a Chapter 13 plan. Of necessity, the Court's consideration of this issue raises questions concerning the applicability of the doctrine of sovereign immunity to municipalities and the New Jersey Division of Motor Vehicles ("DMV") as 'regards the treatment of States under the Eleventh Amendment, as well as the appropriate forum for a debtor seeking redress in the form of injunctive relief and sanctions against sitting municipal court judges for alleged non-compliance with Federal Court orders.

This particular matter comes before the Court first on Motion by the debtor filed December 15, 1997 to Enforce Litigant's Rights, seeking an Order of this Court compelling a sitting Municipal Court Judge to comply with a previous Order of this Court entered November 12, 1997, which Order directed a rescission of an Order of Suspension of the debtor's driving privileges issued by the Municipal Court of Union City, New Jersey. Debtor's December 15th Motion further seeks an Order imposing sanctions on the Union City Municipal Court Judge for an alleged continuing violation of this Court's Order and awarding legal fees to debtor's counsel.

In addition, this matter comes before the Court on debtor's Motion filed January 26, 1998 to hold a second municipal court judge in contempt of court and to hold such judge and the City of Hackensack, New Jersey jointly and severally liable for allegedly intentionally violating the automatic stay of § 362 of the Bankruptcy Code by forcing the debtor to pay parking tickets and for a refund of the fines paid and for damages both compensatory and punitive and legal fees associated with the debtor's Motion.

Hearings were conducted on January 29, 1998 and February 23, 1998 respectively, at which times, the Court took the matters under advisement.

The issues raised herein are core proceedings as defined by the United States Congress in 28 U.S.C. § 157. The within Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

The facts of these matters are not in dispute, and may be summarized as follows.

**Debtor's Motion to Enforce Litigant's Rights**

The debtor, Edwin Perez filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 8, 1997. The debtor's petition indicates that he is a resident of Hoboken, New Jersey. His Summary of Schedules indicates that Mr. Perez has total assets of $105 and total liabilities of $11,422.00, consisting solely of creditors holding unsecured nonpriority claims. At the time of the filing of the petition, Mr. Perez was employed by a temporary agency in West New York, New Jersey and listed his total net monthly take home pay as $520.00. In particular, the Court notes that in addition to approximately $9,000.00 in child support arrears, Schedule F of the debtor's petition lists a minimum of $2,422.00 in debts for parking fines owed to the New Jersey municipalities of West New York, Hackensack, Hoboken, Jersey City, Little Ferry, Trenton and Union City from the years 1992 through 1997.[1] The Court notes that of the total of fourteen debts listed by the debtor on Schedule F, thirteen of those debts are for parking violations.

As a result of the aforesaid fines, the debtor's driving privileges had been suspended pre-petition. The debtor informs the Court that he tried personally to get his suspension lifted by going directly to the concerned municipal courts with proof of his bankruptcy filing as well as debtor's counsel informing the courts by mail of the filing. After receiving no relief, the debtor filed, with this Court, a Motion for Immediate Reinstatement of his driver's license on June 23, 1997.

By its submission filed July 24, 1997, and without filing a general notice of appearance, the New Jersey Attorney General's office, on behalf of the Division of Motor Vehicles, objected to the jurisdiction of this Court to order immediate reinstatement of the debtor's driving privileges relying on the Eleventh Amendment and principles of sovereign immunity. By its Objection, the State specifically states that it "does not consent to be sued in federal court in this case." In addition, although the debtor lists "Motor Vehicle Services," Trenton, New Jersey, as an unsecured creditor for an "unknown" amount stemming from "possible fines or parking tickets," no proof of claim has been filed by the State. Moreover, the debtor does not list any motor vehicle insurance surcharges among his debts in his Schedules.

On November 12, 1997, the Court conducted a hearing concerning confirmation of the debtor's Chapter 13 Plan. No one appeared in opposition and/or submitted an objection to the Plan. Based upon the law as it existed at the time of confirmation, prior to the Third Circuit's pronouncement in *In re Sacred Heart Hospital of Norristown*, 133 F.3d 237 (3rd Cir.1998), the Court confirmed the Chapter 13 Plan on that date.[2] Under the Plan, in addition to $10,000 in child support arrears, which are non-dischargeable, the debtor was to pay through the life of the Plan $242.20 to the Standing Trustee, for parking tickets which represents a 10% payment on the total amount of the fines, $2,422.00. The Court notes that the debtor proposes a "two tier percentage plan," under which the debtor will pay the sum of $20.00 for six months and then the sum of $196.23 for 54 months or until such time as payment is made in full. The Court further notes that the reason stated for the "stepped plan" is that "the debtor's driver's license is now suspended." The debtor's Chapter 13 filing, it was asserted, "would reinstate his driver's license which would enable him to get another job and to make considerably more money." (Adjustment of Debts—Chapter 13 Plan, filed May 8, 1997). In light of the overwhelming majority of the debt listed as parking violations, it would appear to the Court that the precipitating factor for the Chapter 13 filing by Mr. Perez was the suspension of Mr. Perez's driver's license for his failure to pay the aforesaid fines.

---

1. In addition to the known amounts listed for parking tickets, the Petition also lists 7 other potential claims by the referenced municipalities for "unknown" amounts.

2. The Order Confirming Plan was signed November 17, 1997.

Also on November 12, 1997, in accordance with the above-referenced confirmation, this Court then entered an Order submitted by debtor's counsel compelling municipalities to rescind orders of suspension of the debtor's driving privileges and permitting reinstatement of debtor's driver's license concerning the Municipal Courts of Union City, Little Ferry, Jersey City, Hoboken, Hackensack and West New York (the "Rescinding Order"). The Rescinding Order further directed that the Clerk of the Bankruptcy Court mail copies of the Order to the DMV and instructed the Director of the DMV to restore the debtor's diving privileges effective November 12, 1997. In an effort to ensure debtor's full compliance under the Plan, the Court cites verbatim, the following language added to the Rescinding Order by the Court:

The debtor's Chapter 13 Plan by the terms of which the debtor will pay a 10% dividend to the unsecured creditors, including unpaid parking tickets was confirmed by the Bankruptcy Court on November 12, 1997. The within Order providing for the reinstatement of debtor's suspended license based on failure to pay parking tickets is conditioned upon the completion of the debtor's 10% plan. That is, the license is to be restored immediately, however, if the debtor breaches the plan and the case is dismissed prior to completion, the municipalities at that point will be free to rescind debtor's driver's license.

The Rescinding Order was served by counsel for the debtor along with a cover letter to all concerned Municipal Courts and prosecutors on November 20, 1997. (Exhibit B to debtor's Attorney's Certification in Support of Motion, filed December 15, 1997). In response to service of the Rescinding Order, debtor's attorney received a copy of the cover letter from the Chambers of the Union City Municipal Judge with the notation at the bottom dated November 25, 1997 "Bankruptcy does not apply." The notation was apparently directed by the Municipal Judge and initialed by the Clerk of the Court "LM." (Exhibit C to debtor's Attorney's Certification in Support of Motion).

Counsel for the debtor filed the within Motion to Enforce Litigant's Rights on December 15, 1997. At an initial hearing before this Court on January 6, 1998, at which the Municipality of Union City was not represented, the Court required counsel for the debtor to provide service once again to the Town Attorney of Union City as well as the Attorney General's Office of the State of New Jersey. Proof of service of the debtor's Memorandum of Law in Support of the Motion as well as the Rescinding Order was then filed with the Court on January 21, 1998. At the hearing on this matter on January 28th, neither the State of New Jersey nor the Municipality of Union City appeared. After a brief representation by counsel for the debtor confirming appropriate notice, the Court took the matter under advisement without further oral argument.

**Debtor's Motion to Hold Municipal Court Judge in Contempt**

On January 28, 1998, counsel for the debtor filed a Motion seeking an order of this Court holding a Hackensack Municipal Court Judge liable for contempt of the Bankruptcy Court Rescinding Order and to hold the City of Hackensack and the Municipal Court Judge himself jointly and severally liable for his conduct in allegedly "knowingly and intentionally" jailing the debtor to "extract" $290.00 in unpaid parking tickets from him rather than accepting payment through the debtor's Chapter 13 Plan.

The Court's review of a December 22, 1997 letter from the Municipal Court of Hackensack to the debtor (annexed to debtor's counsel's Certification, filed January 26, 1998) schedules a hearing on the debtor's 1992 traffic violation (Ticket No. H00092550) for January 12, 1998 at 3:30 p.m. Upon appearing before him, the Judge, apparently aware of the debtor's bankruptcy filing, ordered the debtor to be jailed until such time as the debtor paid $290.00 in parking violations.

On this point, the debtor's Affidavit, filed January 26, 1998 states that he had been advised by bankruptcy counsel to attend the court hearing scheduled for January 12th and that he was aware that the fines were assessed for "overtime meter parking." The debtor contends that upon being asked by the Judge whether he wanted to plead innocent or guilty, the debtor indicated that he

"guessed" he was guilty but only had fifty dollars on his person at the time. The Judge apparently informed the debtor that he owed $290.00 not $50.00, and ordered the bailiff of the Municipal Court to take him into custody.[3] The debtor further certifies that the Judge instructed him that before the bailiff took him into custody, he could go to the pay phone outside the courtroom and call someone to bring him the money. The debtor was apparently further warned by the Judge that if he attempted to flee, the Judge would issue a warrant for his arrest. The debtor then called his fiancée and told her to bring him the money. When the debtor went back inside the courtroom, the bailiff put him in the holding cell. At approximately 7:15 p.m. that evening, the debtor indicates that he was once again brought before the Judge. The debtor informed the Judge that he had filed for bankruptcy and had forwarded proof thereof to the Municipal Court. The debtor was apparently told by the Judge "that doesn't hold," and that if someone did not bring the money, he was going to serve 30 days in jail. Finally, the debtor states that he was in the holding cell until 7:45 p.m. when he was moved to the Police Department cell. He was finally released at approximately 8:30 p.m. when his fiancée paid the fine.

## DISCUSSION

The current analysis which must be employed here concerns the dilemma which some Chapter 13 debtors and counsel find themselves in when faced with the prospect of attempting to pay parking tickets through a Chapter 13 repayment plan. That is, as pointed out by debtor's counsel in this case, if counsel proposes to pay parking tickets outside the plan, generally the Chapter 13 Trustee will object to such treatment in favor of payments being made through the Chapter 13 Plan. Conversely, when the debtor goes to Municipal Court, and indicates his intent to make payments under a Plan, he is instructed to make payments immediately *outside* the Plan or, as in the case of the Hackensack Municipal Court here, face im-

prisonment. In both Motions brought by the debtor in this case, the Municipal Courts in question refused to recommend reinstatement of driving privileges to the DMV in contravention of this Court's November 12, 1997 Rescinding Order. The debtor now seeks to have this Court enter an order "enforcing litigants's rights" regarding the restoration of the debtor's driving privileges and to hold a Municipal Judge in "contempt" and to award damages for jailing the debtor and refusing to follow this Court's prior Rescinding Order. Debtor's Motions cause this Court to *revisit* the issues as they exist under the current case law in this Circuit. For the reasons which follow, the Court reverses itself as to its prior ruling concerning restoration of driving privileges in this matter and finds that debtor's Motions presently before this Court must be denied.

The specific issues presented by this matter are as follows: First, does this Court have subject matter jurisdiction to order rescission of municipal court orders which suspend a debtor's driving privileges for prepetition municipal parking violations in accord with confirmation and repayment of a percentage of the fines under a debtor's Chapter 13 Plan? Second, does the doctrine of sovereign immunity as applies to States under the Eleventh Amendment, extend to municipalities' and the DMV *vis-a vis* the ability of the Bankruptcy Court to order rescission of municipal court orders of suspension of individual driving privileges? Third, to the extent the Court finds that it has jurisdiction to issue an order respecting driving privileges in accord with payment under a Chapter 13 plan, what are the debtor's remedies and the proper forum for their assertion in seeking injunctive relief as well as compensatory and punitive damages against sitting municipal court judges for alleged non-compliance with Federal Bankruptcy Court Orders?

The Court has carefully examined the case law in this area, including the recent landmark United States Supreme Court decision in *Seminole Tribe of Florida v. Florida*, 517

---

3. Although not specifically referenced in the record, the Court assumes the incarceration by the Municipal Court was under the authority of

N.J.S.A. 39:5–36 which provides for imprisonment on default of payment of fine.

U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and the Third Circuit and New Jersey District Court decisions in *In re Sacred Heart Hospital of Norristown v. Commonwealth of Pennsylvania, Dept. Of Public Welfare*, 133 F.3d 237 (3rd Cir.1998); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 131 F.3d 353 (3rd Cir.1997) and *In re Kish*, 212 B.R. 808 (D.N.J.1997), as well as applicable New Jersey statutes concerning traffic regulation, specifically *N.J.S.A.* 39:4–139.10 and 39:4–139.11 dealing respectively with the suspension and restoration of New Jersey drivers' licenses upon the failure to pay municipal parking violations. This Court now finds, for the reasons which follow, that in light of the Third Circuit's most recent holding in *In re Sacred Heart Hospital of Norristown* in particular, which found § 106 of the Bankruptcy Code unconstitutional to the extent that it purports to abrogate the States' Eleventh Amendment immunity, this Court lacks subject matter jurisdiction to issue orders compelling the restoration of driving privileges, since to do so would interfere with the State of New Jersey's Eleventh Amendment immunity involving licensing practice and procedures, and would, of necessity, impact upon the legal rights of the DMV, an arm of the State. That is, as the law in this Circuit currently stands, the issuance or suspension of state drivers' licenses by the sovereign, *notwithstanding a Chapter 13 Bankruptcy filing by the debtor*, is simply beyond the prerogative of this Court.

Inherent in the Court's ruling in this regard is the finding by the Court that (a) the Rescinding Order of November 12, 1997 must be revoked; (b) the Court's reversal of its prior November 12, 1997 Rescinding Order moots any issues brought by the debtor seeking to hold a municipal court judge in contempt of said Order; and (c) the Court limits the scope of its holding in this matter with respect to the applicability of Eleventh Amendment immunity where municipalities, state licensing and the DMV is concerned, and makes no finding herein regarding the jurisdiction of this Court to issue orders to a municipality in the context of a bankruptcy filing, which does not in any manner impact the State. Finally, the Court makes no ruling herein regarding the dischargeability of parking fines under a Chapter 13 Plan as the matter is not currently before the Court. The Court limits its holding herein to the Motions currently before it, both of which ultimately seek restoration of the debtor's driver's license under New Jersey law.

## ANALYSIS

### Eleventh Amendment Immunity

The Eleventh amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any Foreign State. U.S. Const. Amend. XI.

That the Eleventh Amendment also bars suit against the State by its own citizens has been recognized by the Supreme Court in *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

The Third Circuit in its recent decision in *In re Sacred Heart Hospital of Norristown* reasoned:

> This immunity is based on a two-part presupposition: (1) each state is a sovereign entity in our federal system (citation omitted); and (2) It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. (citation omitted). 133 F.3d at 241.

It further cautioned that Eleventh Amendment immunity is not absolute in that there are two ways to divest a state of its Eleventh Amendment immunity and hale the state into federal court:

> First, a state may *waive* its Eleventh amendment sovereign immunity and consent to suit in federal court. (citation omitted). Second, *Congress can abrogate* a state's Eleventh Amendment immunity, but only if two requirements are met: Congress must unequivocally express an intent to abrogate state immunity, and the legislative action must be "pursuant to a valid exercise of power...." (citation omitted). *Id.* (emphasis added)

Once an express intent by Congress to abrogate is found, the federal court must then determine whether Congress, in enacting the legislation, was acting pursuant to a valid exercise of power. *Id.*

In *Sacred Heart*, the Third Circuit further instructed that prior to the Supreme Court's holding in *Seminole*, two sources of authority had been recognized by the Supreme Court as being vehicles through which Congress could validly abrogate state sovereign immunity: Section 5 of the Fourteenth Amendment[4] and the Interstate Commerce Clause. *Id.* In *Seminole* however, the Supreme Court ruled that "the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 133 F.3d at 237. And as was further recognized by the Third Circuit in its ruling in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 131 F.3d at 358 " . . . . since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment."

Significantly for purposes of the current analysis, in *Sacred Heart*, the Third Circuit addressed the issue of whether Congress expressly abrogated the state's Eleventh Amendment immunity when enacting the current version of § 106 of the Bankruptcy Code and, whether § 106 was passed pursuant to a constitutional provision granting Congress the power to abrogate

Section 106 provides in relevant part:

"Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section . . ."

The *Sacred Heart* Court then held that while Congress undoubtedly expressed its *intent* to abrogate the State's Eleventh Amendment immunity under the Bankruptcy Code by

enacting § 106(a), there is no evidence that Congress did so pursuant to § 5 of the Fourteenth Amendment and therefore, § 106(a) is *unconstitutional* to the extent it purports to abrogate state sovereign immunity in federal court. 133 F.3d at 244.

The Court notes that the broad holding of the majority in *Sacred Heart* rejected *all* sources of abrogation power in Article I, including both the Indian Commerce Clause and the Bankruptcy Clause. The concurring Opinion by Circuit Judge Roth, on the other hand, would deal with potential sources of abrogation power in Article I as they arise on a "case by case" basis and would limit the majority's holding therein to rejecting the Bankruptcy Clause as a source of abrogation power post-*Seminole*. 133 F.3d at 244. This Court notes that as set forth in footnote 8 of the majority opinion in *Sacred Heart*, the Court's holding in striking down § 106 as a valid abrogation of sovereign immunity is in line with at least two pre-*Seminole*, Supreme Court cases, *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) which held that the states and federal government are not deemed to have waived their sovereign immunity by virtue of enacting former § 106(c) of the Bankruptcy Code which was later amended and re-codified as current § 106(a). 133 F.3d at 242, fn. 8.

### Subject Matter Jurisdiction

The issuance of the Third Circuit's decision in *Sacred Heart* on January 8, 1998, subsequent to this Court's confirmation and issuance of the Rescinding Order on November 12, 1997 causes this Court to reexamine the question of subject matter jurisdiction of the Bankruptcy Court to issue an order to the municipal courts concerned reinstating the Chapter 13 debtor's driver's license in accordance with confirmation of his Chapter 13 Plan. As applied to the case *sub judice*, the

---

4. Section 5 of the Fourteenth Amendment provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. XIV, section 5.

In *Katzenbach v. Morgan*, the Supreme Court stated:

Correctly viewed, section 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment. 133 F.3d at 243 (citing 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–23, 16 L.Ed.2d 828 (1966)).

impact of the Third Circuit's broad pronouncement in *Sacred Heart* was to underscore the previous holding of Judge Brown of the New Jersey District Court in *In re Kish,* 212 B.R. 808 (D.N.J.1997) which involved a discharged Chapter 7 debtor's adversary proceeding against the DMV, seeking a determination that she had discharged surcharges for motor vehicle offenses. In *Kish,* the District Court held that the New Jersey DMV was unquestionably a state agency entitled to Eleventh Amendment immunity and a "real party in interest," since a ruling concerning the discharge of surcharges "would seriously interfere with the public administration of the surcharge program and the ability of high risk drivers to obtain and maintain insurance coverage." 212 B.R. at 813.

In *Kish,* Judge Brown, citing the United States Supreme Court decision in *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) emphasized that the Eleventh Amendment bars suits in federal court by a citizen of a state against his own state or against a state agency or department. 212 B.R. at 813. The Court further instructed that the Amendment also prohibits suits against state officials when "the state is the real, substantial party in interest." *Id.* The *Kish* Court then found the state a "real party in interest" if the decision rendered in a case "would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or refrain from acting." *Id.* Thus, in that case, the Court held that to the extent that the Bankruptcy Court's finding of non-dischargeability implicated the DMV's legal rights, the Bankruptcy Court's finding that the surcharges (except for the portion of surcharges actually used to pay state's administrative costs) were a non-dischargeable governmental penalty, would be reversed for lack of subject matter jurisdiction. 212 B.R. at 817.

▆▆▆ In the case at bar, the Court finds itself faced with the argument by Chapter 13 debtor's counsel that insofar as the traffic violations concerned involve *municipal* parking ordinances, and orders of suspension of

driving privileges issued by *municipal* courts, the municipalities are not entitled to Eleventh Amendment immunity under *Seminole* and that therefore, upon confirmation of the debtor's Plan, the Bankruptcy Court has the jurisdictional authority to order the debtor's license restored. Implicit in the debtor's argument in this regard is first, the acknowledgment that to the extent that a separate order of suspension may have been issued by the *State* Court, the debtor's suspension would still stand. Second, the debtor would rely on the body of case law that holds that Eleventh Amendment immunity extends only to states, arms of the state or state officials or agents and does not extend to counties and similar municipal corporations. *Mt. Healthy City School District Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and *In re Decalcomania Mfg. Corp.,* 142 B.R. 670 (Bankr.D.N.J.1990). The Court finds that as specifically applies to municipalities *vis a vis* the suspension and/or restoration of state issued drivers' licenses, debtor's arguments must fail for the reasons which follow.

Initially, under principles enunciated by the Supreme Court in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), and further recognized by the Supreme Court in *Mt. Healthy School District,* 429 U.S. at 280, 97 S.Ct. at 572 (holding that the determination regarding extension of Eleventh Amendment immunity depends, in part, upon the nature of the political entity, under State law), the Court must look to New Jersey law dealing with the suspension and restoration of state issued driver's licenses for failure to pay municipal parking fines in determining whether or not this Court has jurisdiction over the motions before it. The pertinent statutes under the "Parking Offenses Adjudication Act" provide:

**N.J.S.A. 39:4–139.10 Failure to respond to failure to appear notice or to pay parking judgment; notice to division; suspension of driver's license; record**

a. If a person has failed to respond to a failure to appear notice or has failed to pay a parking judgment, the municipal court may *give notice of that fact to the division* in a manner prescribed by the director. If

notice has been given under this section of a person's failure to respond to a failure to appear notice or to pay a parking judgment and if the fines and penalties are paid or if the case is dismissed or otherwise disposed of, *the municipal court shall promptly give notice to that effect to the division.*

b. The judge *or the division* may suspend the driver's license of an owner, lessee, or operator who has not answered or appeared in response to a failure to appear notice or has not paid or otherwise satisfied outstanding parking fines or penalties.

c. The *division* shall keep a record of a suspension ordered by the court pursuant to subsection b. of this section. (emphasis added)

**N.J.S.A. 30:4–139.11 Restoration of driver's license after satisfaction of fines and penalties; recordation.**

a. When a person whose license has been suspended pursuant to subsection b. of section 9 of this act satisfies the fines and any penalties imposed by the court, *the court shall forward to the division a notice* to restore the person's driver's license.

b. Upon receiving a notice to restore pursuant to subsection a. of this section, *the division* shall record the restoration and notify the person of the restoration. (emphasis added).

Thus, under New Jersey law, specifically, *N.J.S.A.* 39:4–139.10(a), upon the failure to pay a municipal parking judgment, the municipal court is to give notice to the DMV in a manner prescribed by the director, and pursuant to subsection (b), the judge or the director may suspend the driver's license of an individual who has not satisfied outstanding parking violations. Moreover, pursuant to *N.J.S.A.* 39:4–139.11, when the fine imposed by the municipality has been satisfied, the municipal court is to forward a notice to the DMV to restore the license. From its review of the District Court holding in *Kish,* in light of the above referenced statutes, it is clear to this Court that the DMV is a "real party-in-interest" in this case and clearly entitled to Eleventh Amendment immunity, since a ruling herein concerning restoration

of debtor's driving privileges, *either through issuance of an order to the municipal courts or directly to the DMV,* upon confirmation of a debtor's Chapter 13 Plan, would, of necessity, compel the state to act or refrain from acting.

The Court further supports its ruling herein, by highlighting the "identity of interest" between a municipal court judge and the Director of the DMV found under New Jersey law, specifically, *N.J.S.A.* 39:5–2 which provides in relevant part:

**N.J.S.A. 39:5–2 Judicial powers of director; holding court; notice to defendants; fees and costs; appeal.**

*The director shall have the same powers as are conferred by this subtitle on a magistrate.* (emphasis added)

Due to the identity of interest between the Director of the DMV and municipal judges cited above, as well as the extensive control over motor vehicle licensing procedures exercised by the State of New Jersey, the Court finds that clearly the suspension or restoration of a driver's license, albeit for municipal parking violations, cannot be administered by the municipality *independent* of the DMV. Therefore, the Court finds the Eleventh Amendment immunity controls to deprive this Court of jurisdiction under the case law of this Circuit as it currently stands. *See also,* Judge Gindin's recent Opinion in *In re Christie,* 218 B.R. 27 (Bankr.D.N.J.1998) (finding Eleventh Amendment immunity should be extended to *County* Social Service agency given the extensive amount of control the State of New Jersey has chosen to exercise over the county welfare administrative agencies).

Finally, although not briefed by debtor's counsel, the Court is constrained to add that to the extent earlier cases have relied on either the broad injunctive power of this Court under § 105 of the Code and/or the "anti-discrimination provision" set forth at Bankruptcy Code § 525,[5] to restore a debtor's driver's license in accordance with a Chapter 13 Plan, *see In re Bill,* 90 B.R. 651 (Bankr.D.N.J.1988) (citing *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233

---

5. Section 525 of the Code provides in pertinent part:

*Protection against discriminatory treatment* ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, [of] a

(1971)(holding a state may not refuse to renew the driver's license of a debtor whose tort judgment, resulting from an automobile collision, was discharged)), such reliance, in this Court's view, is no longer applicable. That is, with the Third Circuit's holding in *Sacred Heart* that Bankruptcy Code § 106 is unconstitutional to the extent that it purports to abrogate states' sovereign immunity, any decision by this Court to restore driving privileges to a debtor, pursuant to Bankruptcy Code §§ 105, 525 or otherwise, would be violative of the State of New Jersey's Eleventh Amendment immunity from federal suit involving its licensing practices and procedures.

In summary, regarding the three specific issues posited earlier herein, the Court finds first, for the reasons aforestated, this Court lacks subject matter jurisdiction to order rescission of municipal court orders which suspend a debtor's driving privileges for prepetition municipal parking valuations in accordance with confirmation and a repayment of a percentage of the fines under a debtor's Chapter 13 Plan, since a ruling concerning restoration of debtor's driving privileges would, of necessity, impact the State. Second, while Eleventh Amendment immunity does not, in fact, extend to municipalities in general, as was recognized by the Supreme Court in *Mt. Healthy City School Dist.*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, and the New Jersey Bankruptcy Court in *In re Decalcomania Mfg. Corp.*, 142 B.R. 670, cited earlier herein, it unquestionably extends to the DMV as an arm of the State and further applies to preclude jurisdiction of this Court over municipalities *vis-a-vis* the suspension and/or restoration of State issued drivers' licenses. Third and finally, having found the November 12, 1997 Rescinding Order violative of the Eleventh Amendment immunity of the State, and having revoked same herein, the issue of the debtor's remedies and the proper forum for their assertion is now deemed moot.

As to the narrow issue of damages pursuant to Bankruptcy Code § 362(h) stemming from the alleged "willful" violation of the automatic stay in jailing the debtor, the Court respectfully acknowledges and adopts the recent holding of Judge Wizmur in her well-reasoned Opinion in *In re Cuevas*, 205 B.R. 457 (Bankr.D.N.J.1997) which found that the incarceration of the debtor upon his non-payment of fines imposed for his prepetition traffic offenses, pursuant to *N.J.S.A.* 39:5–36 was not an attempt to collect a prepetition debt, but was rather a mere continuation of a criminal proceeding previously commenced against the debtor, to which the automatic stay did not apply. In the alternative, were this Court to distinguish *Cuevas* on the facts from the case herein, by finding the actions of the Municipal Court in jailing the debtor were in fact attempts to collect a pre-petition debt and thus violative of the automatic stay, the Court would further decline debtor's request for sanctions by holding that such actions, given the current fluidity of the law in this area, were not "willful" in nature and at best, *de minimus* in effect, give the brief duration of the incarceration, and thus, no damages pursuant to § 362(h) would be imposed.

### CONCLUSION

Since this Court is without jurisdiction to impact a state issued and regulated driver's license, the debtor's Motion filed December 15, 1997 to "enforce litigant's rights" concerning restoration of his driving privileges must be denied. Moreover, since the within Opinion revokes the November 12, 1997 Rescinding Order, debtor's Motion filed January 26, 1998 requesting a finding of "contempt" for failure to abide by the aforesaid Order is now deemed moot.

### ORDER DENYING DEBTOR'S MOTION TO "ENFORCE LITIGANT'S RIGHTS" AND TO FIND MUNICIPAL COURT IN "CONTEMPT"

These matters having been brought before the Court by the Chapter 11 debtor, Edwin Perez, seeking to enforce a prior Order of this Court dated November 12, 1997 which Order directed a rescission of an Order of Suspension of the debtor's driving privileges

---

person that is or has been a debtor under the title. . . . .
As has been noted regarding Section 525,
  In short, a governmental unit may not discriminate against a person in ways that will frustrate the fresh start policies of the Code.
*4 Collier on Bankruptcy*, § 525.02 (15th Ed.).

issued by the Municipal Court of Union City, New Jersey, for non-payment of pre-petition municipal parking fines; and to hold a second municipal court judge in "contempt" of this Court's prior Order; and the Court having rendered a written Opinion this date finding *inter alia* that it lacks subject matter jurisdiction over the suspension and/or restoration of state issued drivers' licenses, the terms of which Opinion are incorporated herein by reference,

**IT IS** on this 6th day of April, 1998

**ORDERED** that the debtor's Motion to enforce litigant's rights is hereby denied;

**IT IS FURTHER ORDERED** that the November 12, 1997 Rescinding Order is revoked by this Court; and

**IT IS FURTHER ORDERED** that as a result of the foregoing, debtor's Motion for contempt against a sitting Municipal Court Judge is now deemed moot.