687 A.2d 311

ROSE SQUEO, PLAINTIFF–APPELLANT, v. BOROUGH OF CARL-STADT, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND BRIAN CURRERI, THOMAS DAVIS, ROBERT DE LEASA, JAMES DONNELLY AND WILLIAM ROSE-MAN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1996—Decided January 21, 1997.

506

Before Judges DREIER and NEWMAN.

*Donovan & Cucchiara,* attorneys for appellant (*Gary J. Cucchiara,* on the brief).

*Porro & Porro,* attorneys for respondents (*Alfred A. Porro, Jr.,* on the brief).

No brief timely filed for respondent Brian Curreri.

The opinion of the court was delivered by

DREIER, P.J.A.D.

Plaintiff, Rose Squeo, appeals from a summary judgment dismissing her Verified Complaint in Lieu of Prerogative Writs by which she had sought an order requiring her reappointment as the Deputy Court Administrator of the Carlstadt Municipal Court, as well as compensatory and punitive damages and attorney's fees and court costs. Defendants are the Borough of Carlstadt and the members of the Borough Council.

Plaintiff was appointed Deputy Municipal Court Clerk of the Carlstadt Municipal Court, a full-time job, on January 1, 1990. She was elevated from the part-time job of docket clerk, which she had held since 1986. In 1994, under *N.J.S.A.* 2B:12–1, plaintiff's title was changed to Deputy Court Administrator. Her duties remained the same, and were solely related to the functioning of the court.[1] According to *R.*1:17–1(h), plaintiff, as a "person[ ] employed or regularly assigned to a municipal court," was prohibited from "engag[ing] in partisan political activity." Plaintiff completed a State course in municipal court administration and was bonded as a municipal court employee. She claims that she performed her duties well and without complaint from her superiors.

The job of "Deputy Municipal Court Clerk" in Carlstadt was established by Borough ordinance in 1975. That ordinance stated:

---

[1] As the deputy court clerk, plaintiff was responsible for assisting the Municipal Court Clerk while the Municipal Court was in session, as well as for the following: (1) assigning tickets to officers; (2) maintaining the ticket control log; (3) entering newly issued tickets into the ATS system; (4) providing receipts for all payments made in court and through violations; (5) entering dispositions through the ATS system; (6) setting up time payment schedules; (7) completing necessary forms for certain offenses; (8) entering complaints into ACS when needed; (9) pulling all close outs (suspensions) and maintaining separate files; (10) issuing motor vehicle warrants; (11) maintaining separate DWI files; (12) answering telephone calls and acting as a problem solver; (13) preparing daily bank deposits; (14) attending each court session to collect fines, prepare mandated forms, and enter court dispositions and payments; and (15) assuming the responsibilities of the Court Administrator when that person is unavailable.

> There shall be a deputy clerk of the municipal court, who shall be appointed by the mayor, with the advice and consent of the council, for a term of one year commencing January 1 of the year in which he is appointed. He shall perform the functions assigned to him by the municipal judge and by the municipal court clerk.

Plaintiff alleges there was an understanding among the borough employees that the annual appointment process was a mere formality.

Plaintiff is a registered Democrat. Before becoming a part-time docket clerk, she "had occasionally served as a board worker at general elections within the Borough of Carlstadt as a result of [her] association with the local Democratic Party." However, since she began working as docket clerk in 1986, she had not participated in any political activities.

On January 1, 1995, the Mayor and Council held the annual reorganization meeting. There, the then-Mayor nominated plaintiff for reappointment. Defendants, all Republicans, objected to the nomination of plaintiff and two other people. Plaintiff's nomination was then held over for a thirty day period. On February 2, 1995, the Mayor and Council again met. Defendants again opposed plaintiff's reappointment, with the vote being 5–1 against her reappointment. Her employment was terminated, effective March 3, 1995, and another person was appointed to replace plaintiff.

During the February 2, 1995 meeting, defendants are alleged to have indicated publicly that they did not want to reappoint plaintiff because she was a Democrat. Defendant Davis said that the job was "a political appointment," apparently indicating they could replace plaintiff if they so desired. Defendant Roseman said there was a "problem" with plaintiff. At that meeting, however, the council decided to keep plaintiff on for thirty days to take the place of a sick employee.

The next day, the municipal court administrator told defendant Davis that she was upset by plaintiff's non-reappointment. Defendant Davis replied that the reasons for plaintiff's removal were "purely political."

In addition, defendant DeLeasa was quoted in a newspaper article as saying something to the effect "that the Republican council majority had no objection to [plaintiff] personally or in her job performance but that she was a Democrat appointee and ... the Republicans want[ed] a member of their own team ... in the job." The reporter of that story certified that it was true.

Later, various other reasons were given for the Council's decision not to reappoint plaintiff. These included her lack of computer skills, the need to correct a problem of missing money, the need for a "professional type" in the job, and general complaints with plaintiff's performance, including rudeness to some of those paying fines, making personal telephone calls while members of the public were waiting to pay fines, clipping coupons, reading books and newspapers at her desk, and a "very lackadaisical" overall performance.

The trial judge found that "there is little dispute that the reason for plaintiff's non-reappointment was politically motivated." He determined that the issue was "[w]hether the position plaintiff occupied require[d] confidentiality, such that party affiliation is an appropriate requirement for effective performance of the job...." He explained that summary judgment was granted because plaintiff, as Acting Municipal Court Administrator, would have access to confidential information and thus her non-reappointment was constitutionally permissible.

We review this grant of a summary judgment constrained, as was the trial judge, by *R.* 4:46–2(c). "[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Under *Brill v. Guardian Life Insurance Co.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), the trial judge must determine whether,

the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.... If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that

issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46–2.

A trial judge can therefore grant summary judgment only "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Ibid.* (citation omitted).

■ Plaintiff contends that summary judgment was inappropriate because her rights under the First Amendment to the United States Constitution were infringed because she was a nonconfidential, nonpolicymaking employee dismissed solely because of her political beliefs. Plaintiff also contends that defendants could not have properly determined to dismiss her merely because her job was subject to annual review.

■ It is clear that plaintiff was not, as was found by the trial judge, a confidential or policymaking employee vis-a-vis the Mayor and Council, with her reappointment subject solely to the political judgment of the governing body. Thus summary judgment in favor of defendants was incorrect. But summary judgment would also have been inappropriate in favor of plaintiff on this record.

The judge cited two cases to support his conclusions: *Battaglia v. Union County Welfare Board,* 88 *N.J.* 48, 438 *A.*2d 530 (1981), *cert. denied,* 456 *U.S.* 965, 102 *S.Ct.* 2045, 72 *L.Ed.*2d 490 (1982), and *Branti v. Finkel,* 445 *U.S.* 507, 100 *S.Ct.* 1287, 63 *L.Ed.*2d 574 (1980). *Battaglia* explains the operative law for this case. Plaintiff there was a legal assistant to the Union County Welfare Board who alleged his one year term of employment was not renewed solely on the basis of his political affiliation. 88 *N.J.* at 53, 438 *A.*2d 530. He claimed that in his job he was a nonconfidential and nonpolicymaking employee. *Id.* at 54, 438 *A.*2d 530.

The Supreme Court began its analysis by noting two United States Supreme Court cases it deemed controlling. *Elrod v. Burns,* 427 *U.S.* 347, 375, 96 *S.Ct.* 2673, 2690, 49 *L.Ed.*2d 547, 566 (1976) (Stewart, J., concurring), was cited for the proposition that a "nonpolicymaking, nonconfidential government employee [cannot] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political

beliefs." *Battaglia, supra,* 88 *N.J.* at 59, 438 *A.*2d 530. The other case cited was *Branti,* which involved two Republican assistant public defenders who were dismissed by the new Public Defender, a Democrat. 445 *U.S.* at 509, 100 *S.Ct.* at 1290, 63 *L.Ed.*2d at 578. The Court there held that termination was inappropriate because it was based solely on political grounds, and the job did not involve political policymaking or confidentiality, so it would have been inappropriate to make the tenure of an assistant public defender "dependent on his allegiance to the dominant political party." *Id.* at 519–520, 100 *S.Ct.* at 1295, 63 *L.Ed.*2d at 584–585.

The *Battaglia* court concluded that "[t]he criteria were not necessarily whether the job was confidential or policymaking in character," but rather "[t]he true question was 'whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Battaglia, supra,* 88 *N.J.* at 60, 438 *A.*2d 530 (quoting 445 *U.S.* at 518, 100 *S.Ct.* at 1295, 63 *L.Ed.*2d at 584). Thus, "policymaking and confidentiality may or may not be helpful criteria in deciding whether party affiliation is an appropriate employment condition." *Ibid.* These "criteria may not be conclusive but could properly be elements in deciding whether party affiliation would probably cause an official to be ineffective in performing the duties of his office." *Id.* at 61, 438 *A.*2d 530. The Supreme Court concluded:

> Thus, *Branti* stands for the proposition that nontenured government attorneys, whose broad public responsibilities are confidential in nature and involve formulating or implementing policy relating to political beliefs, may be discharged when the effective performance of their duties is compromised because of a difference in political commitment. Conversely, a public employee whose employment does not depend upon such a relationship and whose effective performance is not related to party affiliation may not be discharged because of his political beliefs.
>
> [*Id.* at 62, 438 *A.*2d 530].

Finally, and most significantly for the present case, the *Battaglia* court noted that because "no functional difference exists between the failure to reappoint at the end of a fixed term and the dismissal of an at-will employee, the *Branti* rule would appear to

be equally applicable to both." *Id.* at 62–63, 438 *A.2d* 530. *See also Zold v. Township of Mantua*, 935 *F.*2d 633, 636 (3d Cir.1991) ("[T]he *Branti–Elrod* principles are equally applicable to the failure to reappoint an employee at the end of a term ... as they are to dismissal from an at-will term of employment.").[2]

*Battaglia* and *Branti* dictate that the trial court's decision must be reversed. The judge found that plaintiff, "[i]n her capacity as Acting Municipal Court Administrator, ... would have access to confidential information which could possibly be discussed on occasions between parties in the municipality and could signify the confidential supervisory capacity which the job entailed." We reject this analysis. The municipal court and its personnel are an integral part of the judicial system, not of municipal government. Confidential communications between court personnel and municipal officers would be inappropriate, except as they might relate to the business aspects of the clerk's office. Insofar as these duties, listed *supra* at n. 1, might reflect on the municipality, there may have been cause not to reappoint plaintiff, but the issues are separate.

There is no such issue, however, insofar as the confidential nature of plaintiff's position relates to the Mayor and Council, as opposed to the municipal court judge. Therefore, we need not make a detailed confidential employee analysis. *Cf. Morgan v. Union County Bd. of Chosen Freeholders*, 268 *N.J.Super.* 337, 633 *A.*2d 985 (App.Div.1993), *certif. denied*, 135 *N.J.* 468, 640 *A.*2d 850 (1994).

---

[2] We distinguish *Zold* itself from the present case because there it was the deputy township clerk as opposed to deputy court clerk (in our case). The deputy clerk sued over her nonreappointment at the end of her one-year term. *Zold*, 935 *F.*2d at 634–35. The Third Circuit noted that "[t]he deputy clerk is by statute merely a surrogate for the clerk and it is those functions performed in that capacity that must determine whether political affiliation is relevant." *Id.* at 640. The court held that under the facts of that case, there was no reason to place the deputy clerk's functions outside of *Elrod*. *Id.* at 640.

There is, however, a level of analysis that falls outside of the area of confidentiality or policymaking. It is job performance, and in this area defendants have raised issues that cannot be determined on summary judgment. The trial judge found that the "non-reappointment was politically motivated," but defendants have claimed that plaintiff was dismissed for the multiple job performance reasons noted earlier. If these belatedly expressed reasons for non-reappointment were even arguably valid and were the actual reasons for not retaining plaintiff, then she has no claim. This was a clear factual issue, not subject to summary judgment. Plaintiff's position was not subject to tenure; she was the equivalent of an at-will employee. *Battaglia v. Union County Welfare Bd., supra,* 88 *N.J.* at 62-63, 438 *A.*2d 530. On remand, the court must determine whether these claims were a sham to cover up a political firing. If so, plaintiff should be reinstated; if not, the failure to reappoint plaintiff is unassailable. Actual poor performance is not the issue in such a case, but only the perception of such performance by defendants, because, as an "at will" employee, plaintiff could have been fired at the end of her term of employment "for cause or for no cause at all." *Shebar v. Sanyo Business Systems Corp.,* 111 *N.J.* 276, 284, 544 *A.*2d 377 (1988).

Plaintiff also asserts that *N.J.S.A.* 2B:12-1 to -19 (Municipal Courts) has preempted the Borough ordinance that established plaintiff's job, and therefore the Borough of Carlstadt was prohibited from legislating. She cites *Mack Paramus Co. v. Mayor of Paramus,* 103 *N.J.* 564, 573, 511 *A.*2d 1179 (1986) for the proposition that "[i]f the court determines that the Legislature intended 'its own actions, *whether it exhausts the field or touches only part of it, to be exclusive,*' then it will conclude that the State has preempted the field, thereby barring any municipal legislation" (quoting *State v. Ulesky,* 54 *N.J.* 26, 29, 252 *A.*2d 720 (1969) (emphasis added)).

There is no indication of exclusivity in the statute. *N.J.S.A.* 2B:12-1a states, "Every municipality shall establish a municipal court." *N.J.S.A.* 2B:12-10 states:

a. A municipality shall provide for an administrator and other necessary employees for the municipal court and for their compensation. With approval of the Supreme Court, an employee of the municipality, in addition to other duties, may be designated to serve as administrator of the municipal court.

b. The judge of a municipal court may designate in writing an acting administrator or deputy administrator to serve temporarily for an absent administrator or deputy administrator until the absent administrator or deputy administrator returns or a new administrator or deputy administrator is appointed.

*N.J.S.A.* 2B:12–11 establishes that a municipal court administrator must be certified, thereby meeting certain qualifications. Instead of barring municipal action in this area, this statute seems to require that municipalities take action and by ordinance provide for the appointment, tenure and compensation of the employees of the State-mandated local court. Further, this system of municipal appointment of municipal court employees fails each of the five tests for preemption described in *Mack Paramus.* 103 *N.J.* at 573, 511 *A.*2d 1179. There is no conflict between the statute and the ordinance; the statute, as discussed above, is not exclusive; the staffing of municipal courts does not have to be uniform throughout the State; the statute does not pervasively regulate the area; and the ordinance at issue furthers the State's goals. Thus, the ordinance is not preempted.

We determine that summary judgment was mistakenly granted. The issue to be tried on remand is not the confidential/policy-making issue relating to plaintiff's job, but rather whether the non-reappointment was based upon political motives or constituted a good faith termination for perceived poor performance.

The order granting defendant's motion for summary judgment is reversed, and this matter is remanded to the Law Division for trial in conformity with this opinion.