**In re Almon RAPHAEL.**

**Civ.Action No. 99–872(JEI).**

United States District Court,
D. New Jersey.

Aug. 11, 1999.

71

John F. Farmer, Attorney General of New Jersey, by Marc Alan Krefetz, Deputy Attorney General, Trenton, NJ, for Appellant.

Morton Feldman, Atlantic City, NJ, for the Appellee.

## OPINION

IRENAS, District Judge.

This bankruptcy appeal requires this Court to consider whether the Bankruptcy Court improperly issued an order directing the Municipal Court to notify the New Jersey Division of Motor Vehicles ("DMV") to restore a debtor's drivers license that was suspended pre-petition, when such debtor is making payments for his traffic and parking fines through his Chapter 13 bankruptcy plan. The Bankruptcy Court ordered the license restoration after finding that 1) the bankruptcy court was not bound by the decision of a district judge within its district; 2) the municipal court and not the DMV was the real party in interest; and 3) New Jersey municipal courts were not protected from suit in federal courts by the Eleventh Amendment. This Court finds that the Bankruptcy Court lacked jurisdiction to order the Municipal Court to restore Debtor's driving license and reverses the Feb-

ruary 4, 1999, Order of the Bankruptcy Court.

## I.

On August 28, 1998, the Debtor, Almon Raphael ("Raphael") filed a voluntary Chapter 13 petition under Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"). The record reveals that as of October 26, 1998, prior to the filing date, Debtor's driving privileges were suspended by the DMV for failure to comply with the installment orders of Bass River and Clementon Municipal Courts to pay traffic fines, *see* N.J.S.A. 39:4–203.2,[1] N.J.S.A. 2B:12–31(a)(2),[2] as well as for failure to appear in Atlantic City court for a speeding ticket, *see* N.J.S.A. 39:5–30,[3] N.J.S.A. 2B:12–31(a)(1).[4] *See* October 26, 1998, Driver History Suspensions. As a result of the suspension of operating privileges, Debtor was not permitted to operate motor vehicles for any reason. Since Debtor operated motorized equipment at his place of business, he desired to regain his driver's license to retain his employment.

1. N.J.S.A. 39:4–203.2 provides: "If the defendant fails to comply with any of the terms of the installment order, the court may, in addition to any other penalties it may impose, order the suspension of the defendant's driver's license and notify the Director of the Division of Motor Vehicles of the action."

2. N.J.S.A. 2B:12–31(a)(2) provides: "If a defendant sentenced to pay a fine or costs, make restitution, perform community service, serve a term of probation, or do any other act as a condition of that sentence fails to do so, a municipal court may order the suspension of the person's driving privileges or nonresident reciprocity privilege or prohibit the person from receiving or obtaining privileges until the terms and conditions of the sentence have been performed or modified."

3. N.J.S.A. 39:5–30 provides: "Every registration, certificate, every license certificate, every privilege to drive motor vehicles, including commercial motor vehicles as defined in P.L.1990, c. 103 (C.39:3–10.9 et seq.), every endorsement, class of license, and commercial driver license, may be suspended or revoked, and any person my be prohibited from obtaining a driver's license or a registration

certificate, or disqualified from obtaining any class of or endorsement on a commercial driver license, and the reciprocity privilege of any nonresident may be suspended or revoked by the director for a violation of any of the provisions of this Title or on any other reasonable grounds, after due notice in writing of such proposed suspension, revocation, disqualification or prohibition and the ground thereof."

4. N.J.S.A. 2B:12–31(a)(1) provides: "If a defendant charged with a disorderly persons offense, a petty disorderly persons offense, a violation of a municipal ordinance, or a violation of any other law of this State for which a penalty may be imposed fails to appear at any scheduled court proceeding after written notice has been given to said defendant pursuant to the Rules of Court, a municipal court may order the suspension of the person's driving privileges or nonresident reciprocity privilege or prohibit the person from receiving or obtaining driving privileges until the pending matter is adjudicated or otherwise disposed of, except by dismissal for failure to appear."

Debtor proposed to pay parking and traffic fines through his Chapter 13 plan of $33.40 per month for thirty-six months, totaling $1202.40. Of this amount, $480.00 was to be paid to Debtor's unsecured creditors on a *pro rata* basis, plus attorney and trustee fees, over the thirty-six month period. Debtor's plan indicated that his counsel fee of approximately $600 and trustee fee of approximately $120 were included in the balance of the plan.

Debtor's Chapter 13 unsecured creditors included four municipal courts for traffic and parking fines, the New Jersey Automobile Insurance Surcharge and Collections ("AISC") for motor vehicle surcharges, and the Beneficial Finance Co., for a personal bank loan. Debtor's plan also listed the Internal Revenue Service ("IRS") as holding a secured, priority claim in the amount of $600, which was to paid outside of his plan. Debtor did not propose to pay any of his penalties in full through his Chapter 13 plan.

Debtor's plan listed the following creditors and claims: 1) Absecon Municipal Court, for parking fines in the amount of $100; 2) Atlantic City Municipal Court, for parking fines in the amount of $124; 3) Bass River Municipal Court, for traffic fines in the amount of $600; 4) Clementon Municipal Court, for traffic fines in the amount of $450; 5) Beneficial Finance Co., for a personal loan in the amount of $682; 6) New Jersey AISC, for motor vehicle surcharges in the amount of $3500; and 7) the Internal Revenue Service ("IRS"), for federal income taxes in the amount of $600. *See* List of Creditors. The Debtor filed proofs of claim on behalf of each of the above-listed municipal courts. Two of the municipal courts, namely Bass River and Atlantic City, have also filed their own proofs of claim.

Debtor filed a motion, returnable November 9, 1998, to compel certain municipal courts to notify the DMV to restore Debtor's driving privileges. Such motion was directed to the three Municipal Courts holding claims against Rafael, namely Bass River Township, the City of Atlantic City, and Clementon Boro,[5] as well as the New Jersey Division of Motor Vehicles, AISC. Neither the municipalities nor the New Jersey AISC opposed this motion.[6] Essentially, Debtor sought to direct the municipal courts to rescind their respective suspensions of the Debtor's driving privileges since municipal court traffic fines were being paid through his Chapter 13 plan.

The only objection to the Debtor's motion was raised by the State of New Jersey, which entered a special appearance on behalf of the DMV for the limited purpose of asserting the protection of sovereign immunity under the Eleventh Amendment. In seeking to have the Debtor's motion dismissed, the DMV relied on Judge Tuohey's decision in *In re Perez*, 220 B.R. 216 (Bankr.D.N.J.1998), *aff'd*, Civ. No. 98–2043/NHP (D.N.J. August 10, 1998) (unpublished letter opinion).

The Bankruptcy Court considered Debtor's motion at the hearings conducted on November 9 and 16, 1998. At these hearings, United States Bankruptcy Court Judge Wizmur expressed the view that the municipal courts were the real parties in interest in Debtor's quest for relief, and that the municipal courts did not have sovereign immunity under the Eleventh Amendment. Judge Wizmur agreed that the automatic stay precluded the conduct of collection activities against the Debtor by the municipal courts during the pendency of the case. Finally, Judge Wizmur

---

**5.** Since the filing of Debtor's petition, it has become apparent that listing the City of Absecon on Rafael's schedule was a mistake and that Absecon holds no claim against him. *See In re Raphael*, 230 B.R. 657, 660 n. 1 (1999).

**6.** This Court notes that the News Jersey AISC forwarded a notice to the Debtor on September 11, 1998, following the filing of his petition, indicating that any suspension of the Debtor's driving privileges for nonpayment of insurance surcharges would be marked "satisfied."

determined that the municipal courts could be directed to rescind any pending suspensions of the Debtor's driving privileges which were based on the Debtor's failure to pay fines imposed by the municipal courts. *See In re Raphael*, 230 B.R. 657, 661 (Bankr.D.N.J.1999).

The matter was adjourned and reconvened by telephone conference call on November 30, 1998, because further clarification was needed regarding the bases of Debtor's various suspensions. *See id.* On that same date, Judge Wizmur entered an order directing the municipalities of Atlantic City,[7] Bass River, Clementon, and Pleasantville [8] to "issue an order rescinding the suspension of Debtor's driving privileges and communicate its issuance to the Division of Motor Vehicle." *See* November 30, 1998, Order to Municipalities to Issue Rescinding Orders. The rescission applied to any suspension that was not occasioned by the Debtor's failure to appear in response to a summons or a statutory suspension. On December 1, 1998, Clementon Boro complied with the Bankruptcy Court's November 30, 1998, Order.

During the November 30, 1998, conference call, the State asserted that because the District Court had affirmed the *Perez* decision, the Bankruptcy Court was bound by the conclusions drawn in such decision. The Bankruptcy Court decided to afford the State the opportunity to supplement the record on this argument and held a hearing on this issue on December 7, 1998. On February 4, 1999, Judge Wizmur issued an opinion to clarify the bases for the court's previous determinations and rulings.

In this opinion, the Bankruptcy Court considered three issues: 1) whether the bankruptcy court was bound by the decision of a district court within its district; 2) whether the DMV was the real party in interest; and 3) whether Clementon Municipal Court was entitled to sovereign immunity pursuant to the Eleventh Amendment.

The Bankruptcy Court concluded that it was not bound by the decision of a District Court within its district, *In re Perez*, 220 B.R. 216 (Bankr.D.N.J.1998). The State argued that because the *Perez* decision was affirmed by the District Court, *see* Civ. No. 98–2043/NHP (D.N.J. August 10, 1998) (unpublished letter opinion), the Bankruptcy Court was bound by the *Perez* decision. Judge Wizmur rejected this argument since the Third Circuit has stated that "it is clear that there is no such thing as the law of the district." *See In re Raphael*, 230 B.R. at 664 (quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991)) (citations omitted).

The Bankruptcy Court also concluded that the municipal court, and not the DMV, was the real party in interest. The Court relied on N.J.S.A. 2B:12–31(e)(1), which provides:

> When a defendant whose license has been suspended pursuant to subsection a. of this section satisfies the requirements of that subsection, the municipal court shall forward to the Division of Motor Vehicles a notice to restore the defendant's driving privileges.

*See also* 39:4–139.11.[9] Focusing on the language of the statute, the court reasoned

---

7. Prior to the entry of the November 30, 1998, order, the Debtor appeared in Atlantic City in response the open ticket, received a fine of $65, and agreed to pay the fine through his Chapter 13 plan. *See In re Raphael*, 230 B.R. at 663.

8. At the time that Debtor filed his motion, he represented that the. City of Pleasantville held an outstanding claim against him. By correspondence dated October 30, 1998, the City

reflected that all outstanding fines had been paid.

9. N.J.S.A. 39:4–139.11 provides:

> a. When a person whose license has been suspended pursuant to subsection b of section 9 of this act satisfies the fines and any penalties imposed by the court, the court shall forward to the division a notice to restore the person's driver's license.

that the restoration of one's driver license was a ministerial act that is governed by state statute, and has no impact upon the DMV's oversight of the licensing process or upon the state treasury. The court concluded:

> An order which compels the municipal courts to rescind their notices of suspension which recission, by statute, requires the DMV to restore the Debtors' driving privileges, cannot be extended to make the DMV a real party in interest. Such an order does not affect the DMV's potential or actual legal rights. The only real party in interest is the municipal court. The DMV is merely carrying out a related administrative task.

*See In re Raphael*, 230 B.R. 657, 664 (D.N.J.1999).

Finally, the Bankruptcy Court concluded that a New Jersey municipal court, in particular Clementon Municipal Court, was not entitled to sovereign immunity pursuant to the Eleventh Amendment. The Bankruptcy Court first determined that Clementon was the only municipal court whose sovereign immunity was at issue because Bass River and Atlantic City were deemed to have waived sovereign immunity by filing proofs of claim in this case. *See In re Raphael*, 230 B.R. at 665–66 (citing *In re Burke*, 146 F.3d 1313 (11th Cir.1998) (the filing of a proof of claim waives sovereign immunity); *In re Straight*, 143 F.3d 1387 (10th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 446, 142 L.Ed.2d 400 (1998); *In re Fennelly*,

212 B.R. 61, 64 (D.N.J.1997) ("majority rule [is] that filing a proof of claim constitutes a waiver of a State's sovereign immunity"); *but see In re Chen*, 227 B.R. 614, 623 (D.N.J.1998) ("state may still raise the defense of sovereign immunity after filing a proof of claim, however, the state must do so at the outset")).[10]

In finding that a New Jersey municipal court is not entitled to sovereign immunity and is therefore subject to suit in federal court, the Bankruptcy Court applied the factors articulated in *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir.1989). In *Fitchik*, the Third Circuit devised a three factor test to be used to determine whether a state agency or entity is entitled to invoke Eleventh Amendment immunity: 1) whether payment of the judgment would come from the state's treasury; 2) the status of the agency under state law; and 3) the degree of autonomy the agency enjoys. *See id.* at 659. *See also Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1144–45 (3d Cir.1995).

Applying the *Fitchik* factors to the Clementon Municipal Court, the Bankruptcy Court determined that the funding factor weighed against sovereign immunity, while the status and autonomy factors weighed in favor of a finding that New Jersey municipal courts are alter egos of the state and thus entitled to sovereign immunity. *See In re Raphael*, 230 B.R. at 672. The Bankruptcy Court concluded that Clementon Municipal Court did not have sover-

---

b. Upon receiving a notice to restore pursuant to subsection a. of this section, the division shall record the restoration and notify the person of the restoration.

**10.** We do not view a municipal proof of claim designed to collect a traffic fine as a *state* waiver of sovereign immunity. Although we hold that a municipal court judge is a state judicial officer and not a municipal official (*see* discussion *infra* pp. 79–83), we do not view the proof of claim other than as a municipal action. Judge Wizmur's holding that filing the proofs of claim by Bass River and Atlantic City amounted to a waiver by the

State of New Jersey of its sovereign immunity seems to contradict her decision that 11th Amendment immunity was not available because the license revocations were municipal rather than state actions. Of course, even if such proofs of claim did amount to a waiver by the State of New Jersey, the issues raised in this case would require decision because Clementon, which also suspended Rafael's license, did not file a proof of claim. Moreover, it seems unlikely that a state waiver of sovereign immunity with respect to issues relating to the payment of the fines amounts to a waiver of issues relating to the license revocation.

eign immunity because the funding factor is the most significant factor. *See id.* (citing *Fitchik*, 873 F.2d at 659; *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 49, 115 S.Ct. 394, 130 L.Ed.2d 245) (other citations omitted).

The instant appeal was filed on March 1, 1999. In appealing the February 4, 1999, decision of the Bankruptcy Judge, the State of New Jersey ("State") argues that the State is the real party in interest and is entitled to sovereign immunity under the Eleventh Amendment. The State emphasizes that the Bankruptcy Court Order compels the State to act, and interferes with the State's police power and its mandate to administer the licensing of drivers. The State asserts that bankruptcy is not intended to be used to avoid state imposed punishment for illegal behavior and that this is precisely what is permitted by the bankruptcy court order.

The State also disputes the Bankruptcy Judge's reliance on N.J.S.A. 2B:12–31(e)(1) to support its conclusion that the State's compulsion to act was mandated by state statute. The State argues that the statute provides that a municipal court shall forward the DMV a notice to restore defendant's driving privileges when a defendant whose license has been suspended satisfies the requirements of that subsection (subsection a). The State contends, however, that the statutes do not mandate a judge to order restoration of vehicle operating privileges if a defendant has not complied with the penalties and argues that Rafael falls under this latter category.

Alternatively, the State argues that a bankruptcy court is bound by the opinion of the district court of the same district when there is no split of authority between or among the district court judges sitting in that district. The Debtor maintains that the Bankruptcy Court correctly ordered the municipal court to order the DMV to restore Rafael's driving license.

## II.

■ The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Finding of fact are not to be set aside unless they are "clearly erroneous." *See* Fed. R. of Bankr.P. 8013; *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 203 (3d Cir.1995); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989). Questions of law are subject to de novo or plenary review. *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991); *J.P. Fyfe*, 891 F.2d at 69.

## III.

This appeal requires this Court to consider whether the Bankruptcy Court may issue an order directing a Municipal Court to notify the DMV to restore a Debtor's drivers license, when such license was suspended pre-petition and the Debtor is making payments towards his traffic and parking fines through his bankruptcy plan. Initially, this Court must consider whether the creation of a payment schedule that has not yet been satisfied compels a judge to reinstate a Debtor's drivers license when such license was revoked prior to the filing of bankruptcy.

If the establishment of a payment schedule does allow such a result, then this Court must consider whether a bankruptcy judge's order to compel a municipal court to bring about such result infringes upon the State's right to sovereign immunity pursuant to the Eleventh Amendment or the mandate of the Anti–Injunction Act, 28 U.S.C. § 2283.

This Court finds that the Bankruptcy Code does not authorize a Bankruptcy Judge to restore a Debtor's drivers license that was revoked pre-petition, thus curing the collateral consequence of the debt, when such Debtor has not yet satisfied his obligations pursuant to the plan. *See* 11 U.S.C. § 1328 (discharge of debts shall be granted by court "after completion by the

debtor of all payments under the plan"); *infra* note 15.

Alternatively, even if this power is implicit in the Code, this Court finds that such an order violates the protection that the State is afforded by the Eleventh Amendment. Although a bankruptcy court may act to discharge, modify, or reschedule a debt in a Chapter 13 proceeding where the State is a creditor, a bankruptcy court may not issue an order compelling a municipal court to restore the Debtor's drivers license. Even if this action is not barred by the Eleventh Amendment, this Court finds that the Anti–Injunction Act prohibits such a result.

**A.**

■ As a threshold issue, this Court will briefly address the State's argument that the bankruptcy judge was bound by the decision of a district court within its district. The Bankruptcy Court concluded that it was not bound by the decision of a District Court within its district, namely that of *In re Perez*, 220 B.R. 216 (Bankr. D.N.J.1998).

The Court in *In re Perez* considered whether a municipal court could be compelled to reinstate the driving privileges of a Chapter 13 Debtor, whose license had been suspended due to failure to pay municipal parking violations. The *Perez* Court concluded:

> ... it is clear to this Court that the DMV is a 'real party-in-interest' in this case and clearly entitled to Eleventh Amendment immunity, since a ruling herein concerning restoration of Debtor's driving privileges, either through issuance of an order to the municipal courts or directly to the DMV, upon confirmation of a debtor's Chapter 13 Plan, would, of necessity, compel the state to act or refrain from acting.

*In re Perez*, 220 B.R. at 224. The *Perez* court further determined that "clearly the suspension or restoration of a driver's license, albeit for municipal parking violations, cannot be administered by the mu-

nicipality independent of the DMV." *Id.* Therefore, the *Perez* Court found that sovereign immunity applied to preclude adjudication of the issue in federal court.

The State argued that because the *Perez* decision was affirmed by the District Court, *see* Civ. No. 98–2043/NHP (D.N.J. August 10, 1998) (unpublished letter opinion), the Bankruptcy Court was bound by the *Perez* decision. Judge Wizmur rejected this argument since the Third Circuit has stated that "it is clear that there is no such thing as the law of the district." *See In re Raphael*, 230 B.R. at 664 (quoting *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir.1991) (citations omitted)).

This Court finds that the Bankruptcy Court correctly determined that the decision of a district court is not binding on a bankruptcy court. The Third Circuit's opinion clearly rejects any notion that a federal court is bound by the decision of a district court, either within its district or otherwise. The *Threadgill* Court stated:

> First, it is clear that there is no such thing as 'the law of the district.' Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior 'resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of stare decisis does not compel one district court judge to follow the decision of another.'

*Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d at 1371 (citations omitted). It follows that a bankruptcy court is not bound by the decision of a district court, since there is no such thing as "the law of the district."

**B.**

■ The first issue before this Court is whether the Bankruptcy Code grants a bankruptcy judge the power to lift the suspension of a Debtor's driver license

that was suspended prior to the filing of bankruptcy due to the approval of a bankruptcy plan.

Debtor's pre-bankruptcy conduct resulted in a valid license suspension. Since the Chapter 13 filing, the State has made no further attempt to collect Rafael's debt. As of March 25, 1999, the Debtor had not yet completely satisfied his debt in accordance with his Chapter 13 plan, having made three payments in the amount of $41.00 on November 19, 1999, as well as one payment in the amount of $41.00 on January 28, 1999, and one payment in the amount of $40.00 on March 3, 1999. *See* Trustee's Internet Record, dated March 25, 1999.

▇▇▇▇ The Bankruptcy Code authorizes a bankruptcy court to take many actions, including confirmation of a plan, revocation of an order of confirmation, and discharge of a debt.[11] *See* 11 U.S.C. §§ 1324, 1328, 1330. However, a bankruptcy court does not have the power to relieve a party of all of the burdens that were created by nonpayment of debt. The filing of bankruptcy does not necessarily cure the collateral consequences that were created by the debt, such as restoration of a license that was validly suspended prior to the filing of bankruptcy due to Debtor's pre-petition conduct. In addition, such a result would operate to undo a penal step taken by the State, namely the revocation of a drivers license, as well as interfere in the State's control over automobile licensing.

This Court finds no authority in the Bankruptcy Code that indicates that the creation or approval of a payment plan may operate to lift the suspension of a license that was revoked pre-petition. Accordingly, this Court holds that the approval of a Chapter 13 plan does not carry with it the authority to restore a Debtor's drivers license when such license was suspended pre-petition and the state has taken no action post-bankruptcy to compel payment. Therefore, the Bankruptcy Court improperly ordered the municipal court to lift Rafael's license suspension.

This Court notes that a different result might arise if the suspension occurred after the bankruptcy petition was filed. Without reaching a determination on this issue, a post-petition revocation, particularly if done in connection with an effort to collect outstanding fines, would raise issues as to whether the State's conduct violated the provisions of the automatic stay. This Court need not reach this latter question, since the case at bar involves a valid, pre-petition license suspension.

### C.

Alternatively, this Court finds that even if the power to lift the suspension of a

---

11. To the extent that the State argues that the Bankruptcy Judge may not discharge Debtor's traffic and parking fines because the debt is for a fine or penalty and is payable to and for the benefit of a governmental unit, *see* 11 U.S.C. §§ 523(a)(7), 1328(a)(3), this Court rejects the State's argument. A careful review of the case law on the dischargeability of municipal court traffic ordinance violations reveals that, in a Chapter 7 case, the fines are excepted from discharge pursuant to 11 U.S.C. § 523, while in a Chapter 13 case, such fines are generally payable through a Chapter 13 plan. Although the case law is more sparse on the dischargeability of municipal court traffic violations than the dischargeability of automobile insurance surcharges, the analysis and result in the traffic violations context mirrors the treatment of surcharges. *See In re Burkhardt*, 220 B.R. 837, 846 (Bankr.D.N.J.1998)("That is, in a Chapter 7 case, the [municipal court traffic ordinance] fines are generally excepted from discharge pursuant to section 523, while in the Chapter 143 arena, such fines are generally payable through a Chapter 13 plan"); *In re Alicea*, 199 B.R. 862, 864 (Bankr.D.N.J. 1996)("The fact that the surcharges may be nondischargeable in chapter 7 while dischargeable in chapter 13 is not evidence of bad faith, since Congress itself elected to make the chapter 13 discharge broader than the chapter 7 discharge"); *In re Bill*, 90 B.R. 651, 657–58 (Bankr.D.N.J.1988)("The only exceptions to discharge in Chapter 13 are to debt as to which the plan cures defaults and on which the last payment is due after completion of the plan under Code § 1328(a)(1), and alimony, maintenance or support under Code § 1328(a)(2)"); *In re Young*, 10 B.R. 17, 18 (Bankr.S.D.Cal.1980)("Other obligations, including fines excepted from discharge under section 523(a)(7) of the Code, are dischargeable in a Chapter 13 case").

driver's license is implicit in the Bankruptcy Code, that would not end this Court's inquiry. This Court must then contemplate whether the Bankruptcy Judge's Order infringes upon the State's protection pursuant to the Eleventh Amendment of the Constitution. The Bankruptcy Court determined that the municipal court, and not the State, was the real party at issue and was not protected by the Eleventh Amendment. The State argues that it is the real party in interest because the Bankruptcy Judge's order compels it to act.

The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Although the Amendment expressly prohibits suits against States by citizens of other states, the Supreme Court has made clear that the Eleventh Amendment also bars suits against the State by its own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■■■ The Eleventh Amendment has been understood "to stand for not so much what it says, but for the presupposition ... which it confirms." *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)). The presupposition confirms that each state is a sovereign entity in the federal system, and that a state is not subject to suit in federal court by an individual without its consent. *See id.* The type of relief sought by a plaintiff is irrelevant to the question whether the suit is barred by the Eleventh Amendment. *See id.,* 116 S.Ct. at 1124. *See also Cory v. White,* 457 U.S. 85, 90,

102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought").[12] The Eleventh Amendment acts as a jurisdictional bar to the federal courts hearing claims against a State. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 131 F.3d 353, 365 (3d Cir.1997), *aff'd,* —— U.S. ——, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

■■■ The state is the real party in interest, entitled to sovereign immunity, when " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.1989), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989)(quoting *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

■■■ However, Eleventh Amendment immunity is not absolute. There are two ways to divest a state of its Eleventh Amendment sovereign immunity and hale the state into federal court. *See In re Sacred Heart Hospital of Norristown,* 133 F.3d 237, 242 (3d Cir.1998). First, a state way waive its Eleventh Amendment immunity and consent to suit in federal court. Second, Congress can abrogate a state's Eleventh Amendment immunity, if Congress has unequivocally expressed an intent to abrogate, and the legislative action was pursuant to a valid exercise of power. *See id.* (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)(other citations omitted)).

Prior to *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme ·Court

---

**12.** The exception for prospective injunctive relief is discussed *infra* pp. 82–83.

had recognized two sources through which Congress could validly abrogate state sovereign immunity: section 5 of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and the Interstate Commerce Clause, *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In *Seminole Tribe*, the Court overruled *Union Gas* and held that "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 116 S.Ct. at 1131–32. "Thus, since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 131 F.3d 353, 358 (3d Cir.1997). *See also Alden v. Maine*, —— U.S. ——, ——, 119 S.Ct. 2240, 2266, 144 L.Ed.2d 636 (1999); *In re Sacred Heart Hosp. Of Norristown*, 133 F.3d 237, 242 (3d Cir.1998).

Neither party contends that the State of New Jersey has waived its Eleventh Amendment immunity in the case at bar. Therefore, the only way in which the state may be divested of its sovereign immunity is if Congress has abrogated such immunity. The Third Circuit recently considered the constitutionality of 11 U.S.C. § 106(a) of the Bankruptcy Code, which purports to abrogate state sovereign immunity in federal court.[13] *See Sacred Heart Hospital*, 133 F.3d at 245. The Third Circuit concluded that Congress may not abrogate

state sovereign immunity pursuant to any of its Article I powers, and that there is no evidence that Congress enacted § 106(a) of the Bankruptcy Code pursuant to section 5 of the Fourteenth Amendment. Accordingly, the *Sacred Heart* Court held that § 106(a) is unconstitutional to the extent that it purports to abrogate state sovereign immunity in federal court. *See id.*

■ Thus, the relevant question before the Court is whether the state is the real party in interest and entitled to Eleventh Amendment sovereign immunity. The Bankruptcy Court found that the state was not the real party in interest because the municipal court, not the New Jersey DMV, was the party whose legal rights were affected by the November 30, 1998, Federal Court Order. *See In re Raphael*, 230 B.R. 657, 661–64 (Bankr.D.N.J.1999). The Bankruptcy Court further found that the municipal court was not immune from suit in federal court pursuant to the Eleventh Amendment. In making this determination, the Bankruptcy Court applied the *Fitchik* factors, see *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir.1989), and concluded that the municipal court was not an arm of the state for Eleventh Amendment purposes.

The Bankruptcy Court found that the first *Fitchik* factor, whether payment of the judgment would come from the state's treasury, weighed against sovereign immunity. The Court found that the second and third *Fitchik* factors, namely the status of the agency under state law and the degree of autonomy the agency enjoys,

---

**13.** Section 106 of the Bankruptcy Code, entitled "Waiver of sovereign immunity" provides, in relevant part:

(a) notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections ... 106[and] 108 ... of this title....

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to

a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106 (1994).

weighed in favor of state immunity. Despite the Third Circuit's assertion that no one factor is dispositive, the Bankruptcy Court concluded that municipal court was not immune from suit because the treasury factor has been referred to as the most significant factor. *See Fitchik,* 873 F.2d at 659.

In analyzing this question, the first *Fitchik* factor, whether payment of the judgment would come from the State's treasury, will not be the focus of this Court's inquiry. This is for the simple reason that the case at bar concerns a request for injunctive relief instead of a monetary judgment. The Bankruptcy Court's November 30, 1998, Order compels the municipal court to enjoin the license suspension—the impact on the State's treasury, if any, is limited. Therefore, this Court will conduct a comprehensive analysis of the second and third *Fitchik* factors, the municipal court's status under state law as well as its degree of autonomy.

▪ Under New Jersey law, municipal courts are part of the state body politic. The New Jersey Constitution provides that: "The judicial power shall be vested in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction." N.J. CONST., art. VI, § 1, ¶ 1. The municipal court, as an inferior court of limited jurisdiction, shares in this single judicial power. *See Knight v. Margate,* 86 N.J. 374, 385, 431 A.2d 833 (1981) (quoting *Kagan v. Caroselli,* 30 N.J. 371, 377, 153 A.2d 17 (1959)). The municipal court is an integral part of a state-wide judicial system and the judicial power exercised by municipal court judges is the judicial power of the State. *See Knight v. City of Margate,* 86 N.J. at 385, 431 A.2d 833; *Kagan v. Caroselli,* 30 N.J. at 377, 153 A.2d 17; *Calligy v. Mayor of Hoboken,* 284 N.J.Super. 365, 665 A.2d 408 (Law Div.1995). *See also Squeo v. Borough of Carlstadt,* 296 N.J.Super. 505, 512, 687 A.2d 311 (App.Div.1997) ("The municipal

court and its personnel are an integral part of the judicial system, not of municipal government").

Moreover, municipal court judges have been uniformly treated as members of the judiciary, since such judges share and exercise the judicial power. *See Knight v. Margate,* 86 N.J. at 385, 431 A.2d 833 (citing *In re Yengo,* 72 N.J. 425, 371 A.2d 41 (1977); *In re Hardt,* 72 N.J. 160, 369 A.2d 5 (1977)). In *Kagan,* the New Jersey Supreme Court stated:

> A magistrate does not exercise the 'judicial' power, authority, or duty of a municipality. On the contrary, his court is an integral part of a state-wide judicial system, and the judicial power he exercises is the judicial power of the State.

*Kagan,* 30 N.J. at 377, 153 A.2d 17 (citing *Krieger v. Jersey City,* 27 N.J. 535, 539, 143 A.2d 564 (1958)). This interpretation also reflects the Legislature's understanding that the State's municipal court judges are members of the judiciary and vital constituents of the State's justice system. *See* N.J.S.A. 2A:1B–1, *et seq.*

Several aspects of New Jersey law indicate that a municipal court is a state court and not a city court. For example, the New Jersey statutes provide a municipal court and the magistrate jurisdiction over matters which are in no sense municipal. This includes violations of various state laws, *see* N.J.S.A. 2B–17, and certain criminal offenses upon waiver of indictment and trial by jury, *see* N.J.S.A. 2B:12–18. The magistrate is also authorized to commit a person charged with any indictable offense. *See* N.J.S.A. 2B:12–19.

Although the jurisdiction granted to municipal courts is limited, municipal courts are courts of record.[14] *See State v. Garcia,* 297 N.J.Super. 108, 123, 687 A.2d 804 (Mun.Ct.1996) (citing *Board Of Health of Weehawken Tp. v. New York Central R. Co.,* 10 N.J. 284, 292, 90 A.2d 736 (1952) ). Appeals from judgments and orders of mu-

---

14. The proceedings of courts of record are permanently recorded, and the courts have

the power to fine or imprison for contempt. *See* BLACK'S LAW DICTIONARY 326 (5th ed.1979).

nicipal courts are taken to the Superior Court, Law Division. *See State v. Garcia,* 297 N.J.Super. at 124, 687 A.2d 804.

The New Jersey statutes establish that the State retains direction and control over the municipal courts. Each municipal court shall prescribe the form of its seal with the approval of the Supreme Court. *See* N.J.S.A. 2B:1–1. A municipal court judge may be removed from office by the Supreme Court for misconduct in office, willful neglect of duty, or other conduct evidencing unfitness for judicial office, or for incompetence. *See* N.J.S.A. 2B:2A–1 ("As used in this chapter, 'judge' means any judge of the Superior Court, the Tax Court or a municipal court"); N.J.S.A. 2B:2A–2 (governing cause for removal). The Supreme Court may suspend a judge from office, with or without pay, pending the determination of the proceeding. *See* N.J.S.A. 2B:2A–5. The New Jersey Supreme Court may also remove the judge from office, if the Court finds beyond a reasonable doubt that there is cause for removal. *See* N.J.S.A. 2B:2A–9.

New Jersey case law further buttresses the conclusion that the municipal court draws its power from the state. "Administrative control of municipal courts rests in the Supreme Court, which has directed the Chief Justice to designate an Assignment Judge for each vicinage responsible for administration of all courts therein, including municipal courts." *State v. Garcia,* 297 N.J.Super. at 124, 687 A.2d 804.

In short, this Court finds that a New Jersey Municipal Court is the State for purposes of sovereign immunity pursuant to the Eleventh Amendment. This conclusion is consistent with the statutory and case law on this subject. Although the Third Circuit has never considered whether a municipal court is akin to the State for purposes of Eleventh Amendment sovereign immunity, other circuits who have considered this issue have found in the affirmative. *See Kelly v. Municipal Courts of Marion County, Indiana,* 97 F.3d 902, 907–08 (7th Cir.1996) (holding that municipal court is a unit of the judicial branch of the State of Indiana and that a municipal court judge is a state officer entitled to immunity under the Eleventh Amendment); *Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir.1995) (holding that municipal court is arm of the state and protected from suit by Eleventh Amendment immunity); *Harris v. Missouri Court of Appeals,* 787 F.2d 427, 429 (8th Cir.1986) (holding that courts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the Eleventh Amendment), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 114 (1986). *See also Johnson v. State of New Jersey,* 869 F.Supp. 289, 296–97 (D.N.J.1994) (holding that New Jersey Superior Court is protected by Eleventh Amendment sovereign immunity); *Greater Los Angeles Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103, 1110–11 (9th Cir. 1987) (holding that suit against Superior court is suit against the State, barred by Eleventh Amendment).

Accordingly, the bankruptcy judge lacked jurisdiction to order the municipal court to restore Rafael's drivers license because a municipal court is entitled to Eleventh Amendment sovereign immunity and therefore is not subject to suit in federal court.

 Although this Court need not reach this issue, this Court notes that the Eleventh Amendment further bars the bankruptcy judge's November 30, 1998, Order, because such order compels retroactive injunctive relief. The Eleventh Amendment allows jurisdiction for suits seeking prospective injunctive relief or to protect against continuing violations of federal rights. *See Edelman v. Jordan,* 415 U.S. 651, 667–78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the Eleventh Amendment bars suits against states for damage awards as well as retroactive declaratory relief if not coupled with prospective relief. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88

L.Ed.2d 371 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102–03, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Because an order to compel a municipal court to restore a Debtor's drivers license mandates retrospective and not prospective relief, this Court further finds that the Bankruptcy Court lacked the power to issue such order.

### D.

■ Finally, this Court finds that even if the bankruptcy court's November 30, 1998, Order is not prohibited by the Eleventh Amendment, such order violates the provisions of the Anti–Injunction Act, 28 U.S.C. § 2283. The Bankruptcy Court lacked the power to examine the state court proceeding, when the magistrate judge had entered a valid judgment on the merits. The Debtor's appropriate remedy was to appeal the municipal court decision to the appropriate state courts and, potentially, to the United States Supreme Court through a petition for certiorari, *see* 28 U.S.C. § 1257.

■ The Anti–Injunction Act, 28 U.S.C. § 2283 ("Act" or "statute") provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Act is an absolute prohibition against any injunction of any state court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act. *See Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). "The Act's purpose is to forestall the inevitable friction between the state and courts that ensues from the injunction of state judicial proceedings by a federal court." *Id.* (citing *Oklahoma Packing Co. v. Oklahoma Gas*

*& Electric Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 84 L.Ed. 537 (1940)).

The decision of the municipal court to suspend Rafael's drivers license was a discretionary judicial act, not a ministerial one. *See* N.J.S.A. 39:4–203.2 ("If the defendant fails to comply with any of the terms of the installment order, *the court may,* in addition to any other penalties it may impose, order the suspension of the defendant's driver's license and notify the Director of the Division of Motor Vehicles of the action") (emphasis added). *See also* N.J.S.A. 2B:12–31(a)(2). Because the bankruptcy judge's November 30, 1998, order interferes with and enjoins the act of a state judicial officer, this Court will consider whether it runs afoul to the prohibition against a federal injunction of a state court proceeding.

■ This Court must first contemplate whether § 105(a) of the Bankruptcy Code constitutes an express authorization by Congress and therefore falls under one of the exceptions to the statutory prohibition against granting injunctions. Section 105(a) of the Bankruptcy Code creates an exception to the statutory rule preventing a federal court from enjoining state court proceedings by authorizing the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a).

The Third Circuit emphasized that, given the overriding need for comity between state and federal courts this authorization is not without limits. *See In re James,* 940 F.2d 46, 51 (3d Cir.1991). In *James,* the state of New Jersey obtained a state court judgment in its favor in a civil forfeiture action against the property of appellee Norma James ("James"). The bankruptcy court vacated the state court judgment after determining that James' prior Chapter 7 bankruptcy filing had triggered the automatic stay under section 362(b), and that the state forfeiture proceedings did not fall under the "police power" exception to the automatic stay because the State

had no legitimate interest in the funds seized. The District Court affirmed the Bankruptcy Court for different reasons.

■ On appeal, the Third Circuit held that it was improper for the bankruptcy and district courts to collaterally examine the merits of the state court forfeiture proceedings and reversed the judgment of the District Court that affirmed that Bankruptcy Order. *See In re James*, 940 F.2d at 47. The Third Circuit underscored that, although § 105 of the bankruptcy code purports to override the Anti–Injunction Act, it is not as broad as it may first appear. The Court discussed *Hill v. Harding*, 107 U.S. 631, 633, 2 S.Ct. 404, 27 L.Ed. 493 (1883), which distinguished a stay of court proceedings from vacating a state court judgment. The *Hill* Court determined that a bankruptcy court has the power to stay proceedings in state court, but lacks the power to vacate state court judgments.

> It [the Hill Court] reasoned that a stay of suit pending in another court against the bankrupt is neither a dismissal of a suit nor a deprivation of jurisdiction over the matter; it is merely a suspension of the proceedings. Should the state court refuse to obey the stay, the proper recourse is through the state court system and then by writ of certiorari to the United States Supreme Court.

*Id.* at 51. The Third Circuit stated that the *James* District Court clearly questioned the merits of the state court proceedings. *Id.* at 52. "However, once validly entered in a court of competent jurisdiction, a judgment is considered valid until overturned or vacated by that court or an appellate court with supervisory powers over that court's system." *Id.* The only exception to this "hard and fast rule of federal-state comity" comes into play when the state court proceedings are considered a legal nullity and thus void *ab initio*. *See id.*

■ The Third Circuit made clear that a federal bankruptcy judge may intervene only when the state proceedings are void *ab initio;* it lacks the power where it simply disagrees with the result obtained in an otherwise valid proceeding. *See id.* A void judgment is one which, from its inception, was a complete nullity and without legal effect. An erroneously decided judgment is subject only to direct attack. *See id.* (citing *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972)). Vacating a void judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests since a void judgment is null and without effect.

The Third Circuit declared that federal collateral review of a state court proceeding is inappropriate, where, as here, the district court's decision to vacate the state court judgment was premised on its perception that it was erroneously decided on the merits, not that the state court lacked jurisdiction over the subject matter or parties. The Court held that: "... in this case, any relief from the state judgment on the merits, on the basis of the factual underpinnings, musts be accorded by the New Jersey state court which has jurisdiction to hear such matters. We hold that both the bankruptcy court and the district court lacked the power to consider the merits of the state forfeiture proceeding." *Id.* at 53.

Like *James*, the instant case presents a situation where the bankruptcy judge intervened with and reversed a valid judgment of a state judge. The state proceedings were not a legal nullity and thus void *ab initio*. Any relief to which Rafael was entitled from the state judgment on the merits had to be accorded by the New Jersey state court, not a federal bankruptcy or district court. This Court finds that it was improper for the bankruptcy court to collaterally examine the merits of the state court decision to suspend Rafael's driver's license and that Anti–Injunction Act operates to bar the November 30, 1998, order of the Bankruptcy Judge.

■ If the Debtor satisfies his debt by completing his payments in accordance with his Chapter 13 plan, his debt would be discharged. *See* 11 U.S.C. § 1328.[15] Upon such discharge, Rafael appears to be eligible to apply to the municipal court for restoration of his license. Should the request be denied, he could proceed to appeal such denial through the State Court system.

## IV.

For the reasons set forth above, this Court reverses the February 4, 1999, decision of the Bankruptcy Court and remands the matter for further proceedings consistent with this opinion.

**15.** 11 U.S.C. § 1328 provides:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—. . .